933 F.2d 952
 60 USLW 2074, 1991-1 Trade Cases 69,468,
1991 Copr.L.Dec. P 26,749, 19 U.S.P.Q.2d 1345
 BELLSOUTH ADVERTISING & PUBLISHING CORPORATION,
Plaintiff-Counterclaim Defendant-Appellee,
v.
DONNELLEY INFORMATION PUBLISHING, INC., and the Reuben H.
Donnelley Corp., Defendants-Counterclaim
Plaintiffs-Appellants.
Bellsouth Corporation, et al., Counterclaim-Defendants.
 No. 89-5131.
 United States Court of Appeals,
Eleventh Circuit.
 June 18, 1991.
 
 Douglas C. Broeker, Michael J. Cappucio, Miami, Fla., Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., David L. Foster, Theodore Case Whitehouse, Francis J. Menton, Jr., Willkie, Farr & Gallagher, Baila H. Celedonia, Roger L. Zissu, Cowan, Liebowitz, & Latman, PC, New York City, for defendants-counterclaim plaintiffs-appellants.
 Robert E. Richards, Anthony B. Askew, Jones, Askew & Lunsford, Atlanta, Ga., for Bellsouth Advertising.
 John K. Roedel, Jr., Senniger, Powers, Leavitt & Roedel, St. Louis, Mo., for amicus curiae, ANADP.
 Robert E. Marsh, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for amicus curiae, US WEST.
 Robert Alan Garrett, Arnold & Porter, Washington, D.C., for amicus curiae, Bell Atlantic.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JOHNSON and HATCHETT, Circuit Judges, and SMITH*, Senior Circuit Judge.
 EDWARD S. SMITH, Senior Circuit Judge:
 
 
 1
 The case before us concerns infringement of copyright. The United States District Court for the Southern District of Florida granted summary judgment to appellee, Bellsouth Advertising & Publishing Corp. (BAPCO), on its claim that appellants, Donnelley Information Publishing, Inc. and Reuben H. Donnelley Corp. (Donnelly), had infringed on BAPCO's copyrights in its phone directory. The district court also granted summary judgment against Donnelley on their fair use and antitrust misuse defenses. To preserve the integrity of BAPCO's copyrights, the district court enjoined Donnelley from copying any of BAPCO's directories in the future. 719 F.Supp. 1551. Donnelley appeals to this Court for review of the grant of summary judgment and the injunction order. We affirm.
 
 Facts
 
 2
 BAPCO and Southern Bell Telephone and Telegraph Co. (Southern Bell) are wholly-owned subsidiaries of BellSouth Corp. (BellSouth). BAPCO was created for the purpose of preparing, publishing and distributing telephone directories. Pursuant to an agreement between Southern Bell and BAPCO, the latter publishes and distributes a classified advertising directory entitled the Greater Miami Yellow Pages (Yellow Pages). The information that BAPCO presents in its directory is supplied by Southern Bell. This controversy concerns the Yellow Pages published in 1984 in which BAPCO owns a valid copyright.
 
 
 3
 The information embodied in the Yellow Pages is presented in a convenient, organized fashion. A particular directory is organized to have its own geographic scope, so that businesses which have a phone exchange located within the geographic scope are listed in the appropriate directory. Moreover, the Yellow Pages directory is categorized according to business classification. Each business listing is placed within its appropriate business classification in alphabetical order. A business listing comprises the business name, address and phone number. To attract prospective customers, a given business may purchase an advertisement which will appear in the Yellow Pages in addition to its business listing. These advertisements are interspersed within each business classification throughout the Yellow Pages.
 
 
 4
 After BAPCO published the 1984 Yellow Pages, Donnelley began promoting and selling classified advertisements which were to be placed in a competitive classified directory for the Greater Miami area. Donnelley's vice president wrote to BAPCO concerning the acquisition of listings that could be published in their own directory. Subsequently, Southern Bell and Donnelley entered an agreement pertaining to Donnelley's publication and distribution of a competing classified advertising directory in the Greater Miami area. Pursuant to the agreement, Southern Bell provided Donnelley with the name, address, and telephone number of all of its relevant business subscribers.
 
 
 5
 However, Donnelley did not utilize the licensed information to generate their own directory. Instead, Donnelley had Appalachian Computer Services, Inc. key the information and the inherent organizational elements embodied in BAPCO's Yellow Pages into a computer and store it on magnetic tape. Donnelley subsequently printed out listings from the computer data base along with some of its corresponding organizational elements onto sales lead sheets. Donnelley's sales representatives used these lead sheets to solicit additional advertising purchases from those businesses listed in their directory. Donnelley also printed the listings onto their own directory in substantially the same format as that inscribed in the Yellow Pages.
 
 
 6
 On October 2, 1985, BAPCO filed suit against Donnelley alleging three causes of action: (1) copyright infringement, (2) trademark infringement, and (3) unfair competition. BAPCO moved for a preliminary injunction which the district court eventually denied. After the preliminary injunction proceedings, Donnelley answered the complaint naming BAPCO, Southern Bell and Bell South as counterdefendants and alleged: (1) unlawful monopolization, (2) unlawful attempt to monopolize, and (3) invalid trademark registration.
 
 
 7
 After several salvos of summary judgments were motioned by each party, the district court granted summary judgment in favor of BAPCO on the copyright infringement claim, antitrust counterclaims and affirmative defenses. The district court denied Donnelley's motion for summary judgment on the trademark issues and denied BellSouth and Southern Bell's motion for summary judgment on the antitrust counterclaims. Donnelley appeals to this Court, contesting the district court's decision regarding the copyright infringement and the antitrust and fair use affirmative defenses.
 
 Issues
 
 8
 The district court found that BAPCO was entitled to summary judgment on its claim that Donnelley infringed its copyright and that BAPCO had not committed any antitrust violation. We must determine whether the evidence before the court indicates "that there is no genuine issue as to any material fact" relevant to the copyright infringement claim and the fair use and antitrust defenses.[1] If the law applicable to the undisputed facts entitles BAPCO to the judgment entered by the district court, we must affirm.[2]
 
 Infringement
 
 9
 BAPCO claims that Donnelley infringed its copyright in the Yellow Pages. To prevail on a claim of copyright infringement, the plaintiff must establish two elements: (1) that plaintiff owns a valid copyright in the work; and (2) that defendant copied "constituent elements of the work that are original."[3]
 
 
 10
 As to the first element, a phone directory is afforded copyright protection if it classifies as a compilation.[4] Donnelley admits that BAPCO possesses a valid compilation copyright in their phone directories because it qualifies as a compilation under 17 U.S.C. Sec. 101.[5] Donnelley's defense to infringement is that although they did copy information from BAPCO's phone directory, they did not copy any constituent elements that make the work original (i.e., protected expression). Instead the defendant maintains that they only "extracted" information which is not protected by copyright.
 
 
 11
 The Courts of Appeal were in disagreement as to the extent that a compilation work is protected. The "sweat of the brow" standard extends copyright protection to the information in a compilation because labor and effort were expended to gather the information that is placed in the work.[6] The Supreme Court has disapproved the "sweat of the brow" standard, explaining that its defect lies in the fact that the copyright laws were never intended to protect information merely for the reason that it may stem from effort or labor.[7] The copyright laws, as part of the overall protection afforded intellectual property, were designed only to protect "original works of authorship fixed in any tangible medium of expression...."[8] Therefore, the information contained in the directory which is accumulated by effort or labor does not lie within the hegemony of BAPCO's copyright.[9]
 
 
 12
 Instead, the proper standard is delineated in the statute itself. "A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."[10] Therefore, in the case of compilations, the protected expression is the manner of selection, coordination, or arrangement of the information that constitutes the originality, not the information itself that is accumulated by the "sweat of the brow".[11] Hence, copyright protection only extends to the selection, coordination and arrangement which comprises an original format of the compilation work.[12] In the case of compilations, to satisfy the second element of the copyright infringement cause of action, there must be a substantial appropriation of the original format of the compilation to constitute the copying of protected material.[13] Accordingly, we must determine whether there was a substantial appropriation of the format of the plaintiff's compilation.
 
 
 13
 To determine whether there was a substantial appropriation, we initially determine whether BAPCO's format was original. First of all, BAPCO performed several acts of selection. BAPCO had to select and demark the geographic boundaries that correspond to the scope of each directory. These boundaries determine in which directory or directories a particular business will be listed. BAPCO also had to select a directory close date on which no more listing modifications would be reflected in the pending directory publication. Moreover, BAPCO had to create or select numerous business classifications. A particular business is listed according to its appropriate business classification.
 
 
 14
 Secondly, BAPCO had to coordinate all the current informational components of a particular business into one complete business listing. The name of the business had to be coordinated with the business' address and the business' phone number.
 
 
 15
 Lastly, BAPCO had to arrange these coordinated listings according to various categories. All business listings and advertisements had to be arranged under the appropriate business classification. In the final product, all current business listings and advertisements that were arranged according to business classification had to be arranged according to geographical scope. Hence, a particular directory only included those businesses located within the peculiar geographic scope selected for the particular directory. These acts of selection, coordination and arrangement contribute to produce what we agree to be an original format of the directory. The format of the Yellow Pages before us is sufficiently distinct from the "white pages" phone directory involved in Feist to meet the minimal level of independent creativity required to qualify as original. The "white pages" format is a simple alphabetical listing of residential names, addresses and phone numbers. Because the Yellow Pages directory published by BAPCO provides a convenient, unique organization of business listings and advertisements, it merits originality. Therefore, only the original format is protected, the bare information itself segregated from the compilational format is not protected.
 
 
 16
 Next, we decide whether Donnelley substantially appropriated the selection, coordination, or arrangement that comprised the format of the BAPCO directory. The district court found that Donnelley committed three acts of copying: keying the formatted information into the computer, preparing the sales lead sheets and publishing the Donnelley directories. We review these findings to determine if any or all of these acts constitute a substantial appropriation of BAPCO's protected format.
 
 
 17
 The first alleged act of copying is keying formatted information into a computer. Before proceeding on, we put the legal analysis on hold, in order to determine whether the act of keying this formatted information into the computer to form a data base can be a physical act of copying. A copy is a "material object[ ] ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."[14] When the formatted information is first keyed into the computer, it is held in or on some material object. There is no doubt that the work can be perceived by calling up the formatted information on the computer monitor screen. Therefore, such an act is copying if the work is fixed in the computer.
 
 
 18
 "A work is 'fixed' ... when its embodiment ... is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."[15] In the case of a computer, data is not stabilized for more than a transitory duration unless it is stored in or on a material object.[16] Although the record does not indicate whether or how the formatted information was stored in the computer, the district court did find that the formatted information was at some point "stored on magnetic tape and sent to Donnelley." Therefore, the act of keying the formatted information into a computer and storing it on magnetic tape is a physical act of copying.
 
 
 19
 Knowing that keying the work into the computer is an act of physical copying, we now decide whether Donnelley appropriated enough of BAPCO's format to constitute illegal copying. Donnelley's process involved keying into a computer database the name, address, telephone number, the classified heading code, the advertising code and the directory code for every business listing.[17] The classified heading code corresponds to the type of business classification or classifications under which a particular business is placed. The advertising code represents the number of units of advertising that the particular business has purchased. The directory code signifies the directory or directories in which the business was listed thereby revealing its geographical arrangement. These encoded elements could be readily translated back into its BAPCO counterpart classifications through use of Donnelley's decoding key. Although these codes were authored by Donnelley, they correspond to the selection, coordination and arrangement originally authored by BAPCO.
 
 
 20
 The district court correctly found that Donnelley expropriated the essence of BAPCO's compilation. In effect, Donnelley has distilled the BAPCO compilation down to its basic elements, but retained the tools that are required to reconstitute the compilation. By utilizing their classification codes and their decoder keys which match particular codes to the corresponding BAPCO classification, Donnelley can reconstruct the format of BAPCO's compilation.[18]
 
 
 21
 Also probative is the fact that Southern Bell had furnished Donnelley with a list of all Southern Bell business phone subscribers, pursuant to a licensing agreement. The licensed information included the names, addresses and telephone numbers for all business subscribers in Greater Miami. If Donnelley had been interested only in the information contained in the directory, they could have extracted all the information that they needed from the list furnished to them by Southern Bell. Instead, Donnelley copied the formatted information from the Yellow Pages because they were interested in the format and organization of the information in the Yellow pages which was authored by BAPCO. We agree that Donnelley has copied BAPCO's protected material by substantially appropriating the constituent elements of the original format inscribed in the BAPCO directory.
 
 
 22
 Although a closer question, we also agree that Donnelley's printing of the sales lead sheets from the formatted information fixed on their magnetic tape constitutes copying. Donnelley's sales representatives use these lead sheets to sell advertisements to listed businesses. A single entry on the lead sheet comprises the telephone number, the business name, the business address, the business classification, the number of advertising units previously purchased from BAPCO, the advertising rate, and the BAPCO directory in which it was listed.
 
 
 23
 We realize that BAPCO's Yellow Pages and Donnelley's lead sheets were arranged differently. On line one, BAPCO arranged their listings in the phone directory first according to alphabetized business classification and then according to alphabetized business name within each classification. On the other line, Donnelley's lead sheets are arranged in tabular form. However, the protected part of a compilation work is the "selection, coordination or arrangement."[19] Although the arrangement of Donnelley's sales lead sheets and BAPCO's phone directory is different, Donnelley's sales lead sheets continue to appropriate the coordination of informational components in a business listing and the selection of categories utilized by the BAPCO format. This appropriation is substantial and constitutes the copying of constituent elements of originality.[20]
 
 
 24
 Publication of the Donnelley directories is also an act of copying BAPCO's Yellow Pages. Although some of the additional advertisements interspersed throughout the Yellow Pages may be arranged differently or omitted in Donnelley's directory, the overall format of the Yellow Pages is substantially appropriated in the Donnelley directories. Consequently, we agree with the district court in that Donnelley committed acts of copying protected material from BAPCO's copyrighted compilation work.
 
 Fair Use Defense
 
 25
 The doctrine of fair use permits one to use protected material without infringing the copyright. In determining whether fair use is an applicable defense, we must dial through the two-pronged analysis contemplated by 17 U.S.C. Sec. 107.[21] First, we must determine whether the purpose underlying the use committed by the defendant is condoned by the statute. "[F]air use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching, ... scholarship, or research, is not an infringement of copyright."[22] Although the list of acceptable purposes enumerated in the statute is not exclusive, it is evident that the purpose envisioned by the statute must be of a salutary nature. If, and only if, the purpose is acceptable, must we determine whether the defendant's use is fair.[23]
 
 
 26
 In Associated Telephone Directory, this Court paid cursory attention to the first prong of the analysis by assuming that defendant's use of the expression in the phone directory advanced its research purposes.[24] We believe that the issue of purpose in this case demands more attention. Although Donnelley's use appropriated the research formatted in BAPCO's phone directory, the purpose underlying Donnelley's use was not to promote research, but to promote commercial profit. Donnelley's incentive in appropriating the formatted expression in BAPCO's directory was to compete for business advertisements by publishing the infringing directory. BAPCO had already completed the research and formatted it for presentation in the phone directory. Donnelley simply copied BAPCO's formatted research and published it for their own profit.[25] Because the record shows that Donnelley's use does not promote a salutary purpose, the first prong of the fair use doctrine is not satisfied. Accordingly, the defense of fair use is inapplicable, regardless of the second prong analysis.
 
 Misuse Defense
 
 27
 Donnelley asserts that BAPCO, its parent, BellSouth, and its affiliate, Southern Bell, have engaged in an anticompetitive course of conduct thereby misusing its copyright in the Yellow Pages. The alleged object of the joint course of conduct was to maintain monopoly power or to attempt to attain monopoly power either of which are section 2 violations of the Sherman Act.[26] Donnelley alleges that the monopoly was effectuated by (1) refusing to supply Donnelley with the information required to compete in the market and (2) overexerting their intellectual property rights in the copyrighted directories to prohibit the use of competition-essential, unprotected information. Donnelley asserts that the court should not enforce the copyrights because BAPCO has abused its copyright privileges.
 
 
 28
 The antitrust misuse defense is an established defense to patent infringement.[27] The policy supporting the patent misuse defense lies in the equitable clean hands doctrine. A patentee who comes into court, praying that defendant's patent infringement be enjoined will not be gratified if he is guilty of abusing his patent rights.[28] Some courts have concluded that a misuse of copyright defense is inherent in the law of copyright just as a misuse of patent defense is inherent in patent law.[29] Although the patent misuse defense closely fits the copyright law situation and may someday be extended to discipline those who abuse their copyrights, we decline to extend the application in the context before us because there is no antitrust violation.
 
 
 29
 The disdain the law has for monopolies and the acquisition of monopolies is beyond peradventure.[30] However, this case is different from the ordinary monopoly case because BAPCO's right to restrict the copying of its work was recognized in them by the government. Therefore, to commit a Sherman Act violation with regard to an exclusive right that is sanctioned by the government, the grantee must abuse the legitimate privileges that accompany the grant. In order to abuse these privileges, it is necessary that the grantee extend its exclusive right beyond the parameters inherent in the grant.[31]
 
 
 30
 We agree with the district court conclusion that there was no antitrust violation because BAPCO had not "sought to extend the exclusionary power granted by the copyrights beyond the protection of the copyrighted directories." BAPCO only seeks to enforce its exclusionary rights in intellectual property which is an objective "for limited times"[32] countenanced by the Constitution and the copyright laws. Although enforcement of their copyright privileges does give BAPCO a competitive advantage in the advertisement sales market, this advantage is legitimately within the range of sanctioned benefits inherent in compilation copyright ownership.
 
 
 31
 Any suspicion that BAPCO has extended its privileges beyond that which is protected by copyright is dispelled by the fact that Southern Bell furnished Donnelley with a list of its business telephone subscribers pursuant to a license agreement. The furnished information includes names, addresses and telephone numbers for Southern Bell's business subscribers. By enforcing its copyright, BAPCO only seeks to prohibit Donnelley from appropriating its protected format and organization of the information published in the phone directory. BAPCO has not blocked the use of any information that is essential for competition as accused. Instead, BAPCO's alleged accomplice, Southern Bell, has made the information available to Donnelley. Accordingly, we affirm the conclusion that the antitrust misuse defense is not applicable to the undisputed facts of the case.
 
 Conclusion
 
 32
 We agree with the district court that there were no issues of material fact before the trial court on the motions for summary judgment. BAPCO possessed a valid copyright in, and Donnelley copied, the original format of the Yellow Pages. Because the undisputed facts do not support Donnelley's fair use and misuse defenses, BAPCO is entitled to summary judgment on the issue of copyright infringement. Accordingly, the order for summary judgment and the injunction and restraining order were appropriately entered by the District Court for the Southern District of Florida. AFFIRMED.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 Fed.R.Civ.P. 56(c)
 
 
 [2]
 Id
 
 
 [3]
 Feist Publications, Inc. v. Rural Tel. Serv. Co., --- U.S. ----, ----, 111 S.Ct. 1282, 1296, 112 L.Ed.2d 358 (1991)
 
 
 [4]
 17 U.S.C. Sec. 103(a) (1988)
 
 
 [5]
 (1988)
 
 
 [6]
 See, e.g., Hutchinson Tel. Co. v. Fronteer Directory Co., 770 F.2d 128 (8th Cir.1985); Schroeder v. William Morrow & Co., 566 F.2d 3 (7th Cir.1977)
 
 
 [7]
 Feist Publications, --- U.S. at ----, 111 S.Ct. at 1291
 
 
 [8]
 17 U.S.C. Sec. 102(a) (1988)
 
 
 [9]
 Feist Publications, --- U.S. at ----, 111 S.Ct. at 1291
 
 
 [10]
 17 U.S.C. Sec. 101 (1988) (emphasis added). The illuminating statutory distinction is basic to all copyright protection. Words and elements of delineated forms themselves are generally not original; it is the originality of their combination that the law seeks to protect. For example, the notes of the scale from "a" to "g" are preexisting, as one can see. The notes themselves clearly never change, but the manner in which the notes arrange, assembled by an inventive mind, is property of a protected kind. To copy that work is alike to trespass, and will get the infringer a kick off the property
 
 
 [11]
 The labor is more appropriately protected under the law of unfair competition. Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory, 756 F.2d 801, 809-10 n. 9 (11th Cir.1985)
 
 
 [12]
 Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1369-70 (5th Cir.1981) (decided before the Fifth Circuit split, so binding on this Court, Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981)); Worth v. Selchow & Righter Co., 827 F.2d 569, 572-74 (9th Cir.1987), cert. denied, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988); Financial Information, Inc. v. Moody's Investors Serv., Inc., 751 F.2d 501, 506 (2d Cir.1984)
 
 
 [13]
 Associated Tel. Directory, 756 F.2d at 810
 
 
 [14]
 17 U.S.C. Sec. 101
 
 
 [15]
 Id
 
 
 [16]
 See Stern Electronics, Inc. v. Kaufman, 669 F.2d 852, 855-56 n. 4 (2d Cir.1982)
 
 
 [17]
 Donnelley hired Appalachian Computer Services, Inc. of London, Kentucky to key BAPCO's compilation into a computer data base
 
 
 [18]
 Donnelley attempts to evaluate individually each element of the BAPCO directory in asserting that they lack originality, and are thereby unprotected by copyright. However, each component must not be evaluated in a literary vacuum but as an integral part of the whole to determine if BAPCO's original format was copied
 
 
 [19]
 17 U.S.C. Sec. 101 (emphasis added)
 
 
 [20]
 The district court's finding that this particular act was a substantial appropriation, hence copying, might not be as felicitous had the sales lead sheets not been derived from the initial copy which was entered into the computer data base and fixed on the magnetic tape
 
 
 [21]
 (1988)
 
 
 [22]
 Id
 
 
 [23]
 Id
 
 
 [24]
 Associated Tel. Directory, 756 F.2d at 811
 
 
 [25]
 The fact that BAPCO did all the research and Donnelley did none of it only militates against the applicability of the doctrine of fair use; it is not the basis underlying the copyrightability of BAPCO's directory
 
 
 [26]
 15 U.S.C. Sec. 2 (1988)
 
 
 [27]
 Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, reh'g denied, 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222 (1942)
 
 
 [28]
 Id. 314 U.S. at 492-93, 62 S.Ct. at 405
 
 
 [29]
 Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 977 (4th Cir.1990)
 
 
 [30]
 See, e.g. Swift & Co. v. United States, 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905); United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1703-04, 16 L.Ed.2d 778 (1966)
 
 
 [31]
 United States v. United Shoe Mach. Corp., 110 F.Supp. 295 (D.Mass.1953) (patentee violated Sherman Antitrust Act by leasing patented shoe manufacturing machinery pursuant to comprehensive lease agreements which induce lessor to rent successive machines and attain maintenance service only from patentee) aff'd per curiam, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954); Morton Salt Co., 314 U.S. 488, 62 S.Ct. 402 (patentee misused patent by illegally tying the license of patented machines with the sale of patentee's unpatented salt tablets)
 32 U.S. Const. art. I, Sec. 8, cl. 8.