**COATES–FREEMAN ASSOCIATES, INC., Plaintiff,**

v.

**POLAROID CORPORATION, Defendant.**

**Civ. A. No. 90–11475–K.**

United States District Court, D. Massachusetts.

April 9, 1992.

Robert L. Kann, Kerry L. Timbers, Bromberg & Sunstein, Boston, Mass., for plaintiff.

Vincent J. Canzoneri, William John Cheeseman, Michele A. Whitham, Foley, Hoag & Eliot, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

KEETON, District Judge.

One count of plaintiff's complaint in this action is a copyright action under Title 17 of the United States Code. Plaintiff has made a jury demand and, pursuant to an order of the court, the trial has been divided into phases. The parties have made their respective proffers to the court of their evidence with respect to phase I, which concerns only issues relating to the copyrightability as a compilation of a chart ("CFA chart") authored by plaintiff's officer-employee Elizabeth Freeman. Each party has moved for judgment on the stipulated facts and the opposing party's proffer (Docket Nos. 100 and 101, both filed March 12, 1992). In addition, each party has raised objections (some of them by motion) to the evidence submitted in the other's proffer to the court. For the reasons that follow, I now allow the motion for judgment of defendant Polaroid Corporation ("Polaroid") and deny the motion of plaintiff Coates–Freeman Associates, Inc. ("Coates–Freeman").

### I.

The parties have raised numerous substantive and procedural obstacles to the prompt disposition of this case. Even at this late date, discovery disputes remain to be resolved. Moreover, the parties vigorously contest the existence and extent of any "presumption of copyright validity" of the CFA chart as a result of a 1990 copyright registration. I conclude that even if I make assumptions favorable to plaintiff on all issues not addressed and resolved in this Memorandum, plaintiff's proffer is insufficient as a matter of law to support findings that would entitle plaintiff to judgment on its copyright infringement claim. Defendant's motion for judgment on that claim will be allowed.

Before addressing issues of law that must be decided, I take note of the principal assumptions I make in plaintiff's favor on issues that would be in dispute if material to disposition. First, I assume all of plaintiff's proffered testimony would be admissible at trial before a trier of fact. Second, I do not consider any evidence proffered by defendant to which plaintiff has raised objections. Third, I assume that plaintiff's copyright is valid, and, therefore, that disputed burdens of persuasion on any fact questions fall upon the defendant.

### II.

Although Phase I of the trial formally concerns only copyrightability of the CFA chart, as will be explained below the nature of the allegedly infringing works limits the scope of relevant copyrightability questions. The various charts that are the subject of this dispute—the CFA chart and six Polaroid charts that are alleged to infringe it—are appended to this Memorandum and Order. For convenience and clarity, they are described briefly here as well.

The CFA chart is a one-page, two-dimensional, orthogonal chart having two axes and a grid defining thirty-five boxes.

Along the horizontal axis, across the top of the chart (which is labeled, "DECISION MAKING STYLES"), are seven labels: "MAKE DECISION + ANNOUNCE," "MAKE DECISION + EXPLAIN," "MAKE DECISION + DISCUSS," "DISCUSS TENTATIVE DECISION (MAY CHANGE)," "DISCUSS PROBLEM, THEN MAKE DECISION," "DEFINE LIMITS/EMPLOYEE(S) DECIDE," and "EMPLOYEE(S) DECIDE (UP TO BOSS'S LIMITS)." Along the vertical axis, down the left side of the chart (which is labeled, "PROBLEM SOLVING STEPS"), are five labels: "SELECT PROBLEM," "STUDY PROBLEM," "DEVELOP POSSIBLE SOLUTIONS," "SELECT BEST ONE," and "IMPLEMENT DECISION." Each grid box contains some combination of the words "employee" and "manager." The content of each grid box may vary from that of others in one or more of the following respects: the words "manager" and "employee" may appear alone or together, and, if together, with or without an ampersand; words may appear in all capital letters or all lower case; words may appear in parentheses or not.

The various Polaroid charts, though not identical in all relevant respects, share similar features both with one another and with the CFA chart. Except for one chart that has only twenty-five boxes, each chart is a one-page, two-dimensional, orthogonal chart having two axes and defining thirty (not thirty-five) spaces. Three Polaroid charts have a grid that defines thirty boxes; two other Polaroid charts have tick marks on their axes that define thirty spaces. The vertical axis, labeled "PROBLEM SOLVING PROCESS," contains five problem-solving steps similar in many respects, and in two instances in precise language, to the labels on the vertical axis of the CFA chart. The horizontal axis, labeled "PATTERNS OF BEHAVIOR," is somewhat different from that of the CFA chart. First, the axis labels appear below the chart, rather than above. Second, six pairs of labels appear:

| " DIRECT | TEST | CONSULT | COLLABORATE | DELEGATE | FACILITATE" |
|----------|------|---------|-------------|----------|-------------|
| SUPPORT | RESPOND | ADVISE | COLLABORATE | ALIGN | INITIATE. |

In one Polaroid chart, the defined spaces are filled in with combinations of L's and M's, and some spaces are grouped with circles and dotted and solid lines. In a second chart, some of the boxes are shaded or circled, and four boxes contain the word "both." In a third, the numbers one through eight appear in the bottom row of the grid. The spaces in the other Polaroid charts are blank.

Plaintiff claims that its chart is a copyrighted compilation. It acknowledges two sources. First, the seven decision-making styles (horizontal axis) are acknowledged to have been drawn from a 1973 article that appeared in the Harvard Business Review, Robert Tannenbaum & Warren H. Schmidt, *How to Choose a Leadership Pattern,* 51 Harv.Bus.Rev. 3 (1973). Second, the five-step model (vertical axis) is acknowledged to have been common in the field, and is similar to a model containing six or seven steps presented in a book submitted in evidence, Edgar H. Schein, *Process Consultation: Its Role in Organization Development* 46–49 (1969).

III.

In Part IV of this Memorandum, I discuss the idea behind the CFA chart and conclude that the selection and arrangement of elements on the horizontal axis of the chart is not protected by copyright. In Parts V and VI, I conclude (under merger doctrine and by reason of the idea on which the chart is based) that the selection and arrangement of elements on the vertical axis is not protected by copyright. I determine in Part VII that the content of the grid boxes in the CFA chart is not relevant to a determination of copyrightability or infringement in this case. Based upon the

determinations in Parts IV–VII, Part VIII refocuses the issue in this case. In Parts IX and X, I conclude that Polaroid is not liable for infringement of copyrightable elements of the CFA chart.

Before turning to the discussion in the Parts that follow, I discuss in this Part the primary positions of the parties and why I cannot accept either of these contrasting arguments.

At the close of oral arguments on March 19, 1992, an interesting exchange took place. Counsel for the defendant performed a visual demonstration of his theory of the case. He displayed a copy of the CFA chart in which the labels on the axes were physically removable. He argued that the axis labels, drawn from the Tannenbaum and Schmidt article and the Schein book, are not proprietary to Coates–Freeman. Then, removing each set of axis labels as he spoke, he argued that plaintiff seeks copyright protection for a blank chart; after all, he argued, when one removes that which is not Coates–Freeman's, nothing remains. (Defendant's counsel acknowledged that a filled-in grid remains, but asserted that no trier of fact could find infringement of any copyright of that grid by Polaroid because Polaroid had not copied the grid contents and the grid itself was an uncopyrightable "blank form.")

Plaintiff's counsel spoke in spirited rebuttal. He compared the CFA chart to a compilation of photographs by sixteen great American photographers. An individual may own a copyright on the compilation even though all sixteen photographs are in the public domain. The copyright subsists in the author's selection and arrangement of the photographs of others. One could not remove a photograph by Ansel Adams from consideration because the author of the photograph is Ansel Adams; the author of the compilation is entitled to have the trier consider that she chose to include an Adams photograph, chose that particular photograph, placed it in a certain position and orientation, chose to enlarge the photograph, etc. Thus, plaintiff contends that the axes cannot be removed; the copyright consists, in part, in the selection and arrangement of the labels. The limit on variation, plaintiff insists, is only the imagination.

The extreme contentions of both parties illustrated in this exchange must be rejected as a matter of law. First, defendant would inappropriately deprive plaintiff of the elements of selection and arrangement as well as content. For example, the decision to place the decision-making styles on the horizontal axis above the chart is a choice made by the author of the chart. For reasons discussed below, I conclude that no infringement of copyright has occurred in this case. I reach that conclusion, however, after considering the potential contribution, to the copyrightability of the whole work, of elements defendant would remove from consideration.

On the other hand, I cannot sustain plaintiff's contention that the set of possible combinations of decision-making styles and problem-solving steps is near infinite. Plaintiff's seven decision-making styles appear in substance in the Tannenbaum and Schmidt article in the order in which they appear on the CFA chart. Plaintiff suggests that it was creative "choice" to use seven styles in that order because one could have chosen to use more or fewer styles (or a different order). An implicit premise of this suggestion, however, is a dramatic overstatement of the law of copyright. It is not true that every creative choice supports a copyright. For example, a display of all of Ansel Adams' published photographs in chronological order would not entitle one to a copyright in the compilation. There is no creative expression, independent of the idea of the compilation, in "selecting" all items that there are and then "arranging" the selected items in standard order. *See Feist Publications, Inc. v. Rural Telephone Service Co.,* —— U.S. ——, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

### IV.

■ One must distinguish expression from idea when deciding questions of copyrightability. This is no easy task. It requires consideration of degrees of abstrac-

tion and concreteness along a continuum. *See Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930) (L. Hand, J.), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931). All that is expression may be copyrightable (if original and substantial), but there is no copyright protection for ideas. 17 U.S.C. § 102(b). How should we define or describe the idea expressed in the CFA chart?

In her affidavit, the author of the chart stated:

> My goal in authoring the CFA Chart was to present a model for teaching participative management, in the form of a synthesis of the seven leadership styles identified in the Tannenbaum & Schmidt article, in conjunction with other ideas selected from the general literature in the field of participative management, including the ideas on group problem solving presented in Schein's book, so as to make participative management more readily understandable to managers and employees.

Declaration of Elizabeth C. Freeman in Support of Plaintiff's Case in Chief for Phase I (Docket No. 71), ¶ 8. Plaintiff has adopted that statement of the idea of the chart in its submissions. *E.g.*, Mem. in Supp. of Pl. Coates–Freeman Assocs., Inc.'s Mot. for J. as a Matter of L. on the Phase I Trial Issue of Copyrightability at 2–3 (stating Freeman's "goal"—the idea— as a proposed finding of "fact"). Thus, one may understand the idea of the CFA chart to include *the seven leadership styles.* When the idea is so defined, the "choice" to use the seven styles is not at all a creative expression distinct from the idea. The use of the seven styles is not a mode of expression of the idea; rather, it is part of the idea itself and is not copyrightable.

As plaintiff has defined the "idea" of the chart, the relationship between the idea and the choice of *problem-solving steps* is less clear. That is, rather than explicitly incorporating the "seven leadership styles identified in the Tannenbaum & Schmidt article" into the idea, plaintiff has proposed

a more abstract notion of "ideas selected from the general literature in the field of participative management, including the ideas on group problem solving presented in Schein's book." Under this proposed formulation, there is more range for varied ways of expressing the idea embodied in the vertical axis of the CFA chart. However, the idea of the vertical axis is not a complete abstraction. First, it is clear that the idea of the chart limits the selection of labels on the vertical axis to problem-solving steps. Even that characterization of the idea, however, is too broad. Freeman's idea was to present a complete model. Thus, certain limitations on expression are necessarily incorporated. In her affidavit, plaintiff has described problem solving models comprising five, seven, eight, and fourteen steps. Even if one were to assume, as perhaps I must in this procedural context, that a number of other models were available to choose from, the choice Freeman made is of one model from a limited number of models, not five independent steps from an infinite (or even finite but very numerous) universe of steps. This conclusion is of significant consequence in this litigation.

## V.

 Plaintiff argues that the CFA chart is a compilation that demonstrates sufficient creativity to be entitled to copyright protection. In support of that contention, plaintiff relies upon *Kregos v. Associated Press*, 937 F.2d 700 (2d Cir.1991). In that case, the Second Circuit concluded that judgment as a matter of law on the issue of creativity (independent of the idea) was not possible where the author had selected nine elements from a universe of twenty because the author may have exercised creative expression in choosing one selection from 167,960 combinations. *Id.* at 704 & n. 3. Even if we were to assume that fourteen steps are involved here, a choice of five problem-solving steps from a universe of fourteen steps is a selection of one combination from 2002 possible combinations.[1]

---

1. The *Kregos* decision does not explain the mathematical basis for its finding. For the sake of clarity and completeness, I will offer an explanation here. In probability theory, if one is to select a group or "combination" of elements from a finite universe of unique elements, the

Under *Kregos*, such a selection might arguably be creative. However, the court's calculation in *Kregos* is based upon another vital assumption—that the selection of each element is independent of the selection of any other. That assumption does not hold true in this case. The five steps selected for inclusion in the CFA chart comprise a single method. It was the entire method that was selected, not the individual steps. Thus, rather than selecting one combination out of over two thousand, Freeman selected one of a handful, or, at most, a score of highly similar models.

Freeman stated in her affidavit that the particular five-step model she selected is well known. However, there is no evidence in the record that either she, or defendant, copied the five-step method from a published source. It is apparent that the five-step method selected is different in certain aspects from the method in the Schein book, as well as methods described in the Tannenbaum and Schmidt article. Therefore, whether either Freeman or defendant copied the method would be questions for a factfinder if such findings were necessary to a decision in this case.

I do not understand plaintiff's sole or even primary contention to be that under rules of probability plaintiff's selection was sufficiently unlikely to preclude entry of judgment for defendant. Instead, I understand plaintiff's primary contention to be that so long as any thought was exercised and personal opinion expressed, there was sufficient creative expression to support copyright. Because I assume that questions of creative expression, if relevant, would remain for a factfinder I do not address plaintiff's further contentions regarding creative expression.

I conclude, in any event, that in the circumstances of this case there is a merger between the idea of exploring a problem-solving method and the expression of that idea because there are only a limited number of methods of problem solving in the sense Freeman uses that phrase and because the expression involved is that of selecting a particular method to explore. Plaintiff contends, on the authority of *Kregos*, that "[a]s long as selections of facts involve matters of taste and personal opinion, there is no serious risk that withholding the merger doctrine will extend protection to an idea." 937 F.2d at 707. However, *Kregos* dealt with an idea for "an outcome predictive pitching form." The form itself did not predict outcomes, and it was not part of the idea that it would do so. The selection of statistics to aid in the prediction of outcomes was a matter of personal taste because Kregos' choice of

number of different combinations one may select is determined by the formula:

$$_nC_r = \; _nP_r = \frac{n!}{r!} \Big/ \frac{n!}{r!(n-r)!},$$

where n is the number of elements in the universe and r is the number of elements in

the combination to be selected. Thus, in *Kregos*, the number of combinations of 9 elements one can select from a universe of 20 elements may be calculated as follows:

$$_{20}C_9 = \; _{20}P_9 = \frac{20!}{9!} \Big/ \frac{20!}{9!11!} =$$

$$\frac{20\times19\times18\times17\times16\times15\times14\times13\times12\times11\times10\times9\times8\times7\times6\times5\times4\times3\times2\times1}{(9\times8\times7\times6\times5\times4\times3\times2\times1)(11\times10\times9\times8\times7\times6\times5\times4\times3\times2\times1)} = 167{,}960.$$

In the present case,

$$_{14}C_5 = \; _{14}P_5 = \frac{14!}{5!} \Big/ \frac{14!}{5!9!} =$$

$$\frac{14\times13\times12\times11\times10\times9\times8\times7\times6\times5\times4\times3\times2\times1}{(5\times4\times3\times2\times1)(9\times8\times7\times6\times5\times4\times3\times2\times1)} = 2002.$$

pitching statistics was not useful enough to monopolize the idea of predicting outcomes.

The present case does not concern predictions. The reason I apply the merger doctrine here is not because of any risk that Coates–Freeman has monopolized its idea by selecting the most useful method to consider. The CFA chart analyzes problem solving, and plaintiff has chosen to consider one of a finite number of methods of problem solving. Even assuming that plaintiff's decision was a matter of personal taste, I nevertheless conclude that plaintiff's expression is not copyrightable. To conclude otherwise would allow plaintiff to monopolize the idea simply by copyrighting a small sheaf of pages stating and illustrating it. *See Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 606–07 (1st Cir.1988).

## VI.

A further point about probability theory deserves some attention. The *Kregos* court spoke of combinations of baseball statistics and selection by the author. However, as Coates–Freeman argues, arrangement (in mathematical jargon, "permutation") is also important. The *Kregos* court concluded that the arrangement of statistics was "garden-variety," and that the author had not exercised any creativity with respect to the arrangement. What about arrangement of problem-solving steps?

There are 120 ways to arrange the five distinct elements on the vertical axis.[2] However, the five elements are problem-solving *steps*. The order of those steps is important. That order is appropriately considered part of the idea of the chart; not an expression separable from the idea. Although one can imagine a chart that begins with "implement decision," followed by "select problem," then "select best one," etc., one cannot imagine using such a chart to express an idea that involves making "participative management more readily understandable to managers and employ-

ees." Stated differently, there was no exercise of creative expression distinct from the idea in selecting the natural arrangement of steps of a problem-solving model as the arrangement of problem-solving steps on the vertical axis of the CFA chart.

## VII.

Before finally determining the copyrightability of the CFA chart, I turn briefly to one other potentially copyrightable element of the CFA chart.

Coates–Freeman contends that the court must consider whether the CFA chart as a whole is copyrightable. However, beyond doubt, Polaroid did not infringe that which it did not copy, nor did it infringe that which is not similar to any aspect of its charts. *See, e.g., Concrete Mach. Co.*, 843 F.2d at 600. Although phase I of the trial is limited to copyrightability questions, it is appropriate to exclude from consideration copyrightability questions that are not relevant in this case—that is copyrightability of elements of the chart that plainly were not copied by the defendant in this case.

One such question is that of the contribution of the expression in the grid boxes to the copyrightability of the chart as a whole. The fact that the grid boxes are filled in is not a choice independent of the choice to use a grid in the first place. Moreover, only two of the Polaroid charts contain any expression within grid boxes. One Polaroid chart that contains expression contains L's and M's rather than the words "employee" and "manager." The letter M in the Polaroid chart stands for "member" (analogous to the CFA chart's "employee"), not "manager." The second chart has some shaded in and circled boxes, and four of the boxes contain the word "both."

Once one recognizes that Polaroid did not infringe any copyright on the CFA chart merely by filling in the grid (unless the use of a grid is itself infringing, a matter addressed below), it becomes apparent that the content of the CFA chart grid boxes is

---

**2.** In probability theory, the number of distinct ways (permutations) of arranging five unique elements may be calculated as a simple factorial; given five unique steps, the number of permutations is five factorial (5!). $5! = 5 \times 4 \times 3 \times 2 \times 1 = 120$.

irrelevant to issues that must now be decided by the court. No reasonable factfinder could find that any of the content of the grid was copied.

For reasons stated in this Part, I conclude that, in the context of the present litigation, the content of the grid boxes could not properly be given any weight by a factfinder considering the copyrightability of the CFA chart. I make this decision on the basis of a conclusion that facts relating to copying and substantial similarity of the grid contents, though not formally part of this phase of the case, are not genuinely in dispute. (If plaintiff contends that there is a genuine dispute of material fact relating to copying and substantial similarity, supportable by any evidence not included in the plaintiff's proffer for phase I of the trial, plaintiff's further proffer shall be made before the date of the hearing scheduled in the Procedural Order of this date.)

### VIII.

What then are any elements of creative expression, distinct from the idea of the CFA chart, as to which any claim of copying could be asserted against defendant in this case? The following elements remain to be considered: (1) the use of a two-dimensional grid, (2) the placement of the problem-solving steps on the vertical axis and the decision-making styles on the horizontal axis, (3) the placement of the problem-solving-step labels to the left of the grid, and (4) the placement of the decision-making styles above the grid.

Polaroid contends that even the use of a grid is not expression. At oral argument, Polaroid characterized the idea behind the CFA chart as including the use of a two-dimensional orthogonal graphic format. That characterization includes too much. I assume in plaintiff's favor that the grid is not part of or merged with the idea of the CFA chart—that instead the grid is only one manner of expressing "juxtaposition," which is part of the idea behind the CFA chart.

Thus, with all extraneous matter peeled away, at its core, the issue facing the court is whether, in a compilation juxtaposing decision-making styles and problem-solving steps, the decision to use a grid (including the arrangement of grid elements) is a copyrightable expression. This question is addressed in Part IX.

### IX.

■ I assume in plaintiff's favor that plaintiff's grid is not merely a "blank form." Indeed, I do not make any ruling concerning whether the CFA chart as a whole is creative or expressive. Nor do I conclude that the CFA chart is not copyrightable. I do conclude, however, that none of the many elements in the chart contributes to the copyrightability of the chart *in a way relevant to claims against this defendant in this litigation.* Under my rulings in Parts III–VIII, the narrow issue in this case is whether plaintiff's use of a grid is copyrightable expression. I conclude that there is no creative expression, distinct from the idea, in the arrangement of elements of an implementation of the idea in a "garden-variety" grid.

### X.

■ One further issue remains for consideration, the scope of protection afforded by the law of copyright for plaintiff's chart in the event of literal infringement. First, as noted above, the vertical axes of two of Polaroid's charts employ labels identical to that used in the CFA chart. Thus, those two charts are susceptible of a charge that Polaroid copied more than the selection of the five-step method. It might be found that Polaroid copied the twelve-word description of that method also. The First Circuit has ruled, moreover, that even in cases where idea and expression merge, "near identity" will not foreclose a finding of infringement. *Concrete Mach. Co.* 843 F.2d at 606–08. Also, Coates–Freeman alleges that on one occasion Polaroid made an exact photocopy of the entire CFA chart.

If Coates–Freeman can prove these allegations of copying, is it entitled to a determination of the copyrightability of the chart as a whole, including the writing in

the grid? I conclude that the answer is no because each of these uses of the CFA chart is protected by the doctrine of fair use. 17 U.S.C. § 107. An otherwise infringing use may be excused if a decision-maker determines that the use was for purposes of scholarship or research and, after considering the following factors, determines that it was a fair use:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

In this case, the two Polaroid charts that make literal use of the CFA chart's vertical axis were prototype Polaroid charts that were used in the development of later versions of the Polaroid chart. The prototype charts were not disseminated outside Polaroid. Similarly, the photocopy of the CFA chart was not sold or even shown outside Polaroid. Thus, there is no evidence that would support either a finding or a conclusion that any limited infringement that may have taken place had any effect on the potential market for or value of the CFA chart. Indeed, available evidence indicates the opposite. Coates–Freeman does not sell its chart. Rather, it sells its consulting services; the CFA chart is a lecture aid. Polaroid had obtained the CFA chart as a result of a lecture presented by Coates–Freeman in which the chart was distributed. Because Polaroid was given the chart, and could not otherwise have bought a copy, its limited internal use did not even deprive Coates–Freeman of a sale to Polaroid, let alone a third-party.

Although the use was commercial, the taking was so limited in scope and nature that Coates–Freeman cannot reasonably complain.

(The "fair use" issue was not addressed in previous phase I submissions of the parties. If plaintiff contends that there is a genuine dispute of fact material to the "fair use" issue addressed in this Memorandum, plaintiff's proffer of evidence to support that contention shall be made before the hearing scheduled by the Procedural Order of this date.)

ORDER

For the foregoing reasons, unless at the scheduled hearing cause is shown for determining otherwise, it will be Ordered:

(1) Defendant Polaroid Corporation's Motion for Judgment as a Matter of Law on Plaintiff Coates–Freeman Associates, Inc.'s Proffer of Evidence is ALLOWED.

(2) All other pending motions by either party are denied.

(3) Interlocutory judgment shall be entered against plaintiff on the copyright claim against defendant.

# APPENDIX

## PROBLEM SOLVING STEPS

### DECISION MAKING STYLES

| PROBLEM SOLVING STEPS | MAKE DECISION + ANNOUNCE — I | MAKE DECISION + EXPLAIN — II | MAKE DECISION + DISCUSS — III | DISCUSS TENTATIVE DECISION (MAY CHANGE) — IV | DISCUSS PROBLEM, THEN MAKE DECISION — V | DEFINE LIMITS, EMPLOYEE(S) DECIDE — VI | EMPLOYEE(S) DECIDE (UP TO BOSS'S LIMITS) — VII |
|---|---|---|---|---|---|---|---|
| SELECT PROBLEM | MANAGER | MANAGER | MANAGER | MANAGER | MANAGER (EMPLOYEES) | MANAGER (EMPLOYEES) | MANAGER (EMPLOYEES) |
| STUDY PROBLEM | MANAGER | MANAGER | MANAGER | MANAGER | (MANAGER) EMPLOYEE(S) | (manager) EMPLOYEE(S) | (manager) EMPLOYEE(S) |
| DEVELOP POSSIBLE SOLUTIONS | MANAGER | MANAGER | MANAGER | MANAGER | (MANAGER) EMPLOYEE(S) | (manager) EMPLOYEE(S) | (manager) EMPLOYEE(S) |
| SELECT BEST ONE | MANAGER | MANAGER | MANAGER | MANAGER & employee(s) | MANAGER & employee(s) | manager & EMPLOYEE(S) | (manager) EMPLOYEE(S) |
| IMPLEMENT DECISION | employee(s) | employee(s) | EMPLOYEE(S) | EMPLOYEE(S) | EMPLOYEE(S) | EMPLOYEE(S) | EMPLOYEE(S) |

© coates freeman associates, inc., 1984 Based on Tannenbaum & Schmidt, "How to Choose a Leadership Pattern", 1973

4(a) A particular process can be identified as follows:

| | DIRECT | CONSULT | INVOLVE | DELEGATE | FAC |
|---|---|---|---|---|---|
| Select Problem | | | BOTH | | |
| Study Problem | | | BOTH | | |
| Develop Possible Solutions | | | BOTH | | |
| Select Best One | | | BOTH | | |
| Implement Decision | | | | | |

LEADER
Follower

G 00225

▬▬▬▬▬▬▬

▬▬▬▬▬

Participation and Problem Solving: A Grid

| | direct/ support | test/ react | consult/ advise | collaborate/ collaborate | delegate/ aligned action | facilitate/ initiate |
|---|---|---|---|---|---|---|
| select problem | | | | | | |
| study problem | | | | | | |
| develop possible solutions | | | | | | |
| select best one | | | | | | |
| implement decision | | | | | | |

G 00322

PIF's Ex. 10
2/27/91
CBP

# PARTICIPATION GRID 1
# PROBLEM SOLVING

PROBLEM SOLVING PROCESS

PATTERNS OF BEHAVIORS

| LEADER: MEMBER(S): | IMPLEMENT SOLUTION | DECIDE ON BEST ALTERNATIVE | DEVELOP ALTERNATIVE SOLUTIONS | ANALYZE PROBLEM | IDENTIFY PROBLEM |
|---|---|---|---|---|---|
| DIRECT SUPPORT | 1 2 3 | | | | |
| TEST RESPOND | 4 | | | | |
| CONSULT SHARE | 5 | | | | |
| COLLAB-ORATE COMMIT | 6 | | | | |
| DELEGATE ALIGN | 7 | | | | |
| FACILITATE INITIATE | 8 | | | | |

10017

# PARTICIPATION GRID 1
# PROBLEM SOLVING

PROBLEM SOLVING PROCESS

| | LEADER: | DIRECT | TEST | CONSULT | COLLABORATE | DELEGATE | FACILITATE |
|---|---|---|---|---|---|---|---|
| | MEMBER(S): | SUPPORT | RESPOND | ADVISE | COLLABORATE | ALIGN | INITIATE |
| IDENTIFY PROBLEM | | | | | | | |
| ANALYZE PROBLEM | | | | | | | |
| DEVELOP ALTERNATIVE SOLUTIONS | | | | | | | |
| DECIDE ON BEST ALTERNATIVE | | | | | | | |
| IMPLEMENT SOLUTION | | | | | | | |

PATTERNS OF BEHAVIORS

©Polaroid Corporation 1987

10037

PARTICIPATION MATRIX 1

PROBLEM SOLVING PROCESS

IDENTIFY PROBLEM

ANALYZE PROBLEM

DEVELOP ALTERNATIVE SOLUTIONS

DECIDE ON BEST ALTERNATIVE

IMPLEMENT SOLUTION

LEADER:
MEMBER(S):

| DIRECT | TEST | CONSULT | COLLABORATE | DELEGATE | FACILITATE |
| SUPPORT | RESPOND | ADVISE | COLLABORATE | ALIGN | INITIATE |

PATTERNS OF BEHAVIORS

©Polaroid Corporation 1987

# PARTICIPATION MATRIX 1

PROBLEM SOLVING PROCESS

PATTERNS OF BEHAVIORS

| | LEADER: | DIRECT | RESPOND | CONSULT | COLLABORATE | DELEGATE | FACILITATE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | MEMBER(S): | SUPPORT | TEST | ADVISE | COLLABORATE | ALIGN | INITIATE |
| IDENTIFY PROBLEM | | | | | | | |
| ANALYZE PROBLEM | | | | | | | |
| DEVELOP ALTERNATIVE SOLUTIONS | | | | | | | |
| DECIDE ON-BEST ALTERNATIVE | | | | | | | |
| IMPLEMENT SOLUTION | | | | | | | |

Polaroid Corporation 1987

000495