999 F.2d 1436
 62 USLW 2172, 1993 Copr.L.Dec. P 27,141,
146 P.U.R.4th 616,
28 U.S.P.Q.2d 1001
 BELLSOUTH ADVERTISING & PUBLISHING CORPORATION,
Plaintiff-Counterclaim Defendant-Appellee,
v.
DONNELLEY INFORMATION PUBLISHING, INC. and The Reuben H.
Donnelley Corp., Defendants-Counterclaim
Plaintiffs-Appellants,
BellSouth Corporation, et al., Counterclaim Defendants.
 No. 89-5131.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 2, 1993.
 
 Douglas C. Broeker, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, FL, David L. Foster, Theodore Case Whitehouse, Francis J. Menton, Jr., Willkie, Farr & Gallagher, Baila H. Celedonia, Roger L. Zissu, Cowan, Liebowitz & Latman, P.C., New York City, for appellants.
 Robert Richards, Anthony B. Askew, Jones, Askew & Lunsford, Atlanta, GA, for Bellsouth Advertising.
 John K. Roedel, Jr., Senniger, Powers, Leavitt & Roedel, St. Louis, MO, for amicus ANADP.
 Robert E. Marsh, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for amicus--US WEST.
 Robert Alan Garrett, Arnold & Porter, Washington, DC, for amicus Bell Atlantic.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, FAY, HATCHETT, EDMONDSON, BIRCH, BLACK and CARNES, Circuit Judges*.
 BIRCH, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 In this appeal, we must decide whether acts of copying infringed the compilation copyright registered in a "yellow pages" classified business directory. The parties have stipulated that the directory, which is a typical yellow pages directory, qualifies for compilation copyright protection. Thus, we are called upon to apply Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), which addressed copyright protection for a "white pages" telephone directory, to resolve the infringement claims presented to us concerning a directory of a different color.
 
 
 2
 The pivotal issue in this case is whether that which was copied by the alleged infringer was protected by the registered claim of compilation copyright. The parties agree that the only elements of a work entitled to compilation copyright protection are the selection, arrangement or coordination as they appear in the work as a whole. The parties dispute what elements of a classified directory constitute such selection, arrangement or coordination. Mindful that the protection afforded to a whole work by a compilation copyright is "thin,"[1] the determination as to whether an infringement of a compilation copyright has occurred is particularly difficult where less than the entire work is copied.
 
 II. BACKGROUND
 
 3
 BellSouth Advertising & Publishing Corporation ("BAPCO") is a wholly owned subsidiary of BellSouth Corporation ("BellSouth") created for the purpose of preparing, publishing and distributing telephone directories. Using telephone listing information supplied by Southern Bell Telephone and Telegraph Company ("Southern Bell"), another wholly owned subsidiary of BellSouth, BAPCO publishes a classified, "yellow pages," advertising directory for the Greater Miami area. The BAPCO directory is organized into an alphabetical list of business classifications. Each business-rate telephone service subscriber is listed in alphabetical order under one appropriate heading without charge. A subscriber may purchase cross listings under different business classifications or advertisements to appear along with its business listing.
 
 
 4
 After BAPCO published its 1984 directory for the Greater Miami area, Donnelley Information Publishing, Inc. and Reuben H. Donnelley Corp. (collectively "Donnelley") began promoting and selling classified advertisements to be placed in a competitive classified directory for the Greater Miami area. To generate a list of business telephone subscribers to be solicited for placement in its directory, Donnelley gave copies of BAPCO's directory to Appalachian Computer Services, Inc. ("ACS"), a data entry company. Donnelley first marked each listing in the BAPCO directory with one alphanumeric code indicating the size and type of advertisement purchased by the subscriber[2] and a similar code indicating the type of business represented by the BAPCO heading under which the listing appeared. For each listing appearing in the BAPCO directory, ACS created a computer data base containing the name, address, and telephone number of the subscriber as well as the codes corresponding to business type and unit of advertising. From this data base, Donnelley printed sales lead sheets, listing this information for each subscriber, to be used to contact business telephone subscribers to sell advertisements and listings in the Donnelley directory. Relying on this information copied from the BAPCO directory, Donnelley ultimately prepared its own competitive directory for the Greater Miami area.
 
 
 5
 BAPCO sued Donnelley for alleged copyright infringement,[3] trademark infringement, and unfair competition. After the district court denied BAPCO's motion for a preliminary injunction, Donnelley answered and counterclaimed against BAPCO, Southern Bell and BellSouth, for alleged violations of federal antitrust law. On the copyright infringement claim, the district court granted summary judgment to BAPCO and denied Donnelley's motion seeking partial summary judgment in its favor,[4] BellSouth Advertising & Publishing Corp. v. Donnelly Info. Publishing, Inc., 719 F.Supp. 1551 (S.D.Fla.1988).
 
 
 6
 The district court found, and Donnelley admitted, that BAPCO owned a valid compilation copyright in its classified directory. Donnelley stipulated that, in preparing its data base and sales lead sheets, it obtained from each listing in the BAPCO directory, the telephone number, name, address, kind of business, and unit of advertising for the listed subscriber. As further evidence of copying, the district court relied on affidavits and deposition testimony from Donnelley's representatives and the presence of a number of erroneous listings common to the BAPCO and Donnelley directories. From the process by which Donnelley prepared its competitive yellow pages directory, the district court identified three acts of copying: (1) the entry of subscriber information into the computer data base by ACS; (2) the printout of sales lead sheets from this data base; and (3) the publication of Donnelley's directory. Based on these acts of copying, the court granted BAPCO's motion for summary judgment on its copyright infringement claims.[5] Donnelley appealed the district court's resolution of the parties' motions on the copyright claim.[6]III. DISCUSSION
 
 
 7
 A. Feist Publications and the Requirement of Originality
 
 
 8
 In Feist Publications, the Supreme Court clarified the scope of copyright protection afforded to factual compilations. Rural Telephone Service Company ("Rural") claimed that Feist Publications, Inc. ("Feist") infringed Rural's copyright by using names and telephone number listings from Rural's white pages directory to compile its own white pages directory. Observing the inherent tension between the axiom of copyright law that facts are not copyrightable[7] and the principle that compilations of fact generally are copyrightable, the Court identified those components of a factual compilation that may receive copyright protection under certain circumstances. 499 U.S. at ----, 111 S.Ct. at 1287.
 
 
 9
 The Court stressed that "[t]he sine qua non of copyright is originality." 499 U.S. at ----, 111 S.Ct. at 1287.[8] "Facts, whether alone or as a part of a compilation, are not original and therefore may not be copyrighted." 499 U.S. at ----, 111 S.Ct. at 1290. Drawing upon the requirement of originality and the definition of "compilation" in the Copyright Act,[9] the Court held that a compiler's selection, arrangement and coordination, if original, are the only protectable elements of a factual compilation. 499 U.S. at ----, 111 S.Ct. at 1289.[10]
 
 
 10
 Applying the requirement of originality to the directory compiled by Rural, the Court noted that the listings, consisting of subscribers' names, towns of residence, and telephone numbers, were uncopyrightable facts. Further, the selection, coordination, and arrangement of Rural's white pages were not sufficiently original to merit copyright protection. "Rural's selection of listings could not be more obvious: it publishes the most basic information--name, town, and telephone number--about each person who applies to it for telephone service." 499 U.S. at ----, 111 S.Ct. at 1296. Rural failed to establish any original elements of coordination or arrangement: "there is nothing remotely creative about arranging names alphabetically in a white pages directory. It is an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." 499 U.S. at ----, 111 S.Ct. at 1297. In short, "Rural expended sufficient effort to make the white pages directory useful, but insufficient creativity to make it original." 499 U.S. at ----, 111 S.Ct. at 1296.
 
 B. BAPCO's Claim of Infringement
 
 11
 To establish its claim of copyright infringement, BAPCO must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." 499 U.S. at ----, 111 S.Ct. at 1296. The validity of BAPCO's copyright in its directory, considered as a whole, was conceded by Donnelley.[11] To demonstrate the second element of infringement, BAPCO must prove that Donnelley, by taking the material it copied from the BAPCO directory, appropriated BAPCO's original selection, coordination or arrangement.
 
 
 12
 The district court found that BAPCO engaged in a number of acts of selection in compiling its listings. For example, BAPCO determined the geographic scope of its directory and the closing date after which no changes in listings would be included. BellSouth, 719 F.Supp. at 1557-58. The district court erred, however, in implicitly determining that these selective acts were sufficiently original to merit copyright protection. Rural obviously established a geographic scope and a closing date for its white pages, which were held uncopyrightable as a matter of law in Feist. The district court's analysis would protect such factual elements of every compilation; any collection of facts "fixed in any tangible medium of expression"[12] will by necessity have a closing date and, where applicable, a geographic limit selected by the compiler. The district court found that BAPCO "selected" its listings by requiring its yellow pages subscribers to use a business telephone service. Id. at 1557. The district court also focused on a number of marketing techniques employed by BAPCO to generate its listings, such as the determination of the number of free listings offered to each subscriber, the selection of which customers to contact by an on-premise visit from sales personnel, the selection of the date of commencement of its advertisement sales campaign, and the procedure used to recommend the purchase of listings under multiple headings. Id. at 1557. The district court again failed to consider whether these "acts of selection" met the level of originality required to extend the protection of copyright to BAPCO's selection.
 
 
 13
 More fundamental, these acts are not acts of authorship, but techniques for the discovery of facts. In Feist, the Court emphasized the distinction "between creation and discovery: the first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence." 499 U.S. at ----, 111 S.Ct. at 1288. By employing its sales strategies, BAPCO discovered that certain subscribers describe their businesses in a particular fashion and were willing to pay for a certain number of listings under certain available business descriptions. To be sure, BAPCO employed a set of strategies or techniques for discovering this data. Any useful collection of facts, however, will be structured by a number of decisions regarding the optimal manner in which to collect the pertinent data in the most efficient and accurate manner. If this were sufficient, then the protection of copyright would extend to census data, cited in Feist as a paradigmatic example of a work that lacks the requisite originality. 499 U.S. at ----, 111 S.Ct. at 1288. Just as the Copyright Act does not protect "industrious collection," it affords no shelter to the resourceful, efficient, or creative collector. See Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1372 (5th Cir. July 1981) ("The valuable distinction in copyright law between facts and the expression of facts cannot be maintained if research is held to be copyrightable."). The protection of copyright must inhere in a creatively original selection of facts to be reported and not in the creative means used to discover those facts. See 17 U.S.C. § 102(b) ("In no case does copyright protection ... extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). Ultimately, the district court erred by extending copyright protection to the collection of facts in the BAPCO directory based on the uncopyrightable formative acts used to generate those listings.
 
 
 14
 In addition to these acts of selection, the district court found that BAPCO engaged in feats of coordination and arrangement to generate its yellow pages directory. The court explains that BAPCO arranged its directory in an alphabetized list of business types, with individual businesses listed in alphabetical order under the applicable headings. The Copyright Act protects "original works of authorship." 17 U.S.C. § 102(a). BAPCO's arrangement and coordination is "entirely typical" for a business directory. Feist, 499 U.S. at ----, 111 S.Ct. at 1296.[13] With respect to business telephone directories, such an arrangement "is not only unoriginal, it is practically inevitable." 499 U.S. at ----, 111 S.Ct. at 1297.
 
 
 15
 BAPCO's claim of copyright in the arrangement of its directory also does not survive application of the "merger" doctrine. Under the merger doctrine, "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir.1991);[14] see also Baker v. Selden, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879). Because this is the one way to construct a useful business directory, the arrangement has "merged" with the idea of a business directory, and thus is uncopyrightable.[15]
 
 
 16
 The district court's suggestion that BAPCO could have arranged its headings according to the number of advertisers or to list its subscribers under each heading according to the length of time for which that subscriber had appeared under that heading misapprehends the question. The relevant inquiry is not whether there is some imaginable, although manifestly less useful, method of arranging business telephone listings. In Feist, Rural could have published multiple directories for its service area or listed its numbers in numerical order, by age, or by neighborhood within a single directory. The pertinent inquiry is whether the compiler has demonstrated originality, the "sine qua non " of copyright, in its arrangement or coordination. The arrangement of BAPCO's yellow pages, like that of Rural's white pages is "entirely typical" of its respective type.
 
 
 17
 The district court also identified acts of coordination and arrangement in the particular system of headings used in the BAPCO directory. The district court appears to find that, when Donnelley entered the listing information from the BAPCO directory, it also copied the particular heading under which that listing appeared in the BAPCO directory. 719 F.Supp. at 1558-59.[16] BAPCO, however, failed to introduce evidence sufficient to establish a genuine dispute of material fact as to whether Donnelley copied the particular heading structure employed by BAPCO. Donnelley stipulated that it obtained the "business type" for each listing from the BAPCO directory. R1-8. The evidence submitted to the district court in the form of affidavit, deposition, and witness testimony reveals that Donnelley established its own system of headings and that, in constructing its data base, Donnelley entered an alphanumeric code that corresponded to the Donnelley heading with each BAPCO listing. 5SR2, at 183-85; 1SR-434, at 76-77, 143-44; 1SR-435, at 253-54 and Ex. 278; Deposition of John Notestein, at 10, 12, 14-15, 22. Further, the sales lead sheets generated by Donnelley from its database, as well as pages of the respective directories submitted to the district court, illustrate that Donnelley selected a somewhat different category of headings to describe the listings originally appearing in the BAPCO directory.[17] Considering the extent to which the heading structure of a classified business directory is dictated by functional considerations and common industry practice, the differences apparent in the glossary of headings employed by Donnelley are sufficient to rebut any inference of copying that otherwise might be drawn from those terms that are common to both directories.[18] In sum, the evidence before the district court requires the conclusion that, by determining the type of business of each subscriber by observation of the BAPCO directory and translating that business type into an encoded heading of its own creation, Donnelley extracted uncopyrightable information regarding the business activities of BAPCO's subscribers without appropriating any arguably original, protectable expressive element in the BAPCO glossary of headings.
 
 
 18
 Additionally, BAPCO failed to present evidence that, even if copied, its heading structure constitutes original expression warranting copyright protection. Initially, many of the selected headings, for example "Attorneys" or "Banks," represent such an obvious label for the entities appearing under these headings as to lack the requisite originality for copyright protection.[19] BAPCO can claim no copyright in the idea of dividing churches by denomination or attorneys by area of specialty. Further, any expressive act in including a category such as "Banks" or in dividing "Attorneys" into categories such as "Bankruptcy" or "Criminal Law" would lose copyright protection because it would merge with the idea of listing such entities as a class of businesses in a business directory.[20] The evidence submitted by Donnelley also establishes that many of BAPCO's headings result from certain standard industry practices, such as the recommendations of the National Yellow Pages Sales Association, with regard to the selection and phrasing of headings in business directories. Finally, as established by the testimony of BAPCO's representatives, the ultimate appearance of a particular subscriber under a certain heading is determined by the subscriber's willingness to purchase those listings in the BAPCO directory. While BAPCO may select the headings that are offered to the subscriber, it is the subscriber who selects from those alternatives the headings under which the subscriber will appear in the copyrighted directory. The headings that actually appear in the directory thus, do not owe their origin to BAPCO and BAPCO has claimed no copyright in the larger universe of headings that are offered to subscribers. Thus, the elements of selection, coordination and arrangement identified by the district court, and purportedly copied by Donnelley, as a matter of law, do not display the originality required to merit copyright protection.
 
 
 19
 Although purporting to consider whether Donnelley copied the original elements of selection, arrangement or coordination from the BAPCO directory, the opinion of the district court rests, at least in part, on a comparison of the appearance of corresponding pages from both directories.[21] For example, the court concluded that "Donnelley used a format nearly identical to that used by BAPCO" and that "although Donnelley's directory is not identical to BAPCO's directory, the material was copied and used to produce a directory substantially similar in both content and format." 719 F.Supp. at 1559. The district court erred, however, by failing to consider the degree to which the similarity between the two directories was because of Donnelley's use of the uncopyrightable facts, such as name, number, address, and business type, from the BAPCO directory. Further, to the extent that this similarity of format resulted from was due to the common arrangement and coordination of the two directories into alphabetized business classifications, with alphabetized listings under each classification, the district court erred by extending the scope of BAPCO's copyright to capture the system of organization common to all classified directories in the public domain. Moreover, the other elements of format common to the two directories, such as the organization of listings into four columns, are also manifestly typical, obvious and unoriginal.
 
 
 20
 By comparing the overall appearance of the two directories through its comparison of the corresponding pages, the district court effectively failed to consider whether Donnelley copied the "constituent elements of the work that are original." Feist, 499 U.S. at ----, 111 S.Ct. at 1296. In the case of a factual compilation, a comparison of the copyright holder's work with that of the alleged infringer must distinguish similarities attributable to ideas, which are unprotected per se, or to expression not owned by the copyright holder, from those similarities resulting from the copying of the compiler's original elements.[22] We consider this conclusion to be compelled by section 103(b) of the Copyright Act, which directs that "[t]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).
 
 
 21
 We note that Donnelley did not copy, nor was alleged to have copied, the text or graphic material from the advertisements in the BAPCO directory, the positioning of these advertisements, the typeface, or the textual material included by BAPCO to assist the user. Unlike the infringer in Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801 (11th Cir.1985), Donnelley did not photocopy, or reproduce by any equivalent means, the page by page arrangement or appearance of its competitor's directory in the process of creating its own work. Although the amount of material taken from the BAPCO directory was substantial in a purely quantitative sense, Donnelley did not, by this process, appropriate whatever original elements might arguably inhere in the BAPCO directory. Given that the copyright protection of a factual compilation is "thin," a competitor's taking the bulk of the factual material from a preexisting compilation without infringement of the author's copyright is not surprising. Feist, 499 U.S. at ----, 111 S.Ct. at 1289. While it may seem unfair for a compiler's labor to be used by a competitor without compensation, the Court noted in Feist that "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' " 499 U.S. at ----, 111 S.Ct. at 1290 (quoting U.S. Const. art. I, § 8, cl. 8). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." Id. (emphasis added); see also Harper & Row, Publishers v. Nation Enterprises, 471 U.S. 539, 545-46, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985).
 
 IV. CONCLUSION
 
 22
 By copying the name, address, telephone number, business type, and unit of advertisement purchased for each listing in the BAPCO directory,[23] Donnelley copied no original element of selection, coordination or arrangement; Donnelley thus was entitled to summary judgment on BAPCO's claim of copyright infringement.[24] We REVERSE the judgment of the district court granting summary judgment to BAPCO on its claim of copyright infringement and enter judgment in favor of Donnelley on this claim.APPENDIX A
 
 
 23
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEAPPENDIX B
 
 
 24
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEAPPENDIX C
 
 
 25
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEHATCHETT, Circuit Judge, dissenting:
 
 
 26
 The majority's holding establishes a rule of law that transforms the multi-billion dollar classified publishing industry from a business requiring the production of a useful directory based on multiple layers of creative decision-making, into a business requiring no more than a successful race to a data processing agency to copy another publisher's copyrighted work-product. In reaching this incredible result, the majority forsakes thoughtful analysis of the evidence under the governing principles articulated in Feist, and leaps to a conclusion based on nothing more than its collective judgment of what ought to be copyrightable.
 
 
 27
 Not only does the majority ignore the evidence presented in the district court, but it also allows the appellant to obtain an outright reversal of the district court with new arguments and supplemental evidence that the district court never considered. In doing so, the majority transforms this en banc appellate court into no more than a multiple judge trial court that allows unsuccessful litigants to have the proverbial 'second bite at the apple.' I cannot join the majority in its disregard for the well-established parameters of appellate review; thus, I respectfully dissent.[1]
 
 DISCUSSION
 
 28
 In order to prevail on a claim of copyright infringement, a plaintiff must prove two elements: (1) that the plaintiff owns a valid copyright in the work; and (2) that the defendant copied "constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, ----, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358, 379 (1991). Donnelley Information Publishing, Inc. and Reuben H. Donnelley Corporation (collectively "Donnelley") concedes that Bellsouth Advertising & Publishing Corporation ("BAPCO") possesses a valid compilation copyright in the 1984 Greater Miami Yellow Pages (1984 Yellow Pages ), taken as a whole. Donnelley also stipulated that it copied the following information from the 1984 Yellow Pages in preparing its "sales lead" sheets: "1. telephone number--under the first column; 2. name--under the second column; 3. address--under the third column; 4. kind of business--under the fourth column; and 5. unit of advertising--under the fifth column." Therefore, based on Donnelley's concessions that BAPCO possesses a valid copyright and its stipulation to copying information from the 1984 Yellow Pages, this court is only asked to determine whether Donnelley substantially copied constituent elements of the 1984 Yellow Pages that are original.
 
 I. Copyrightability of Compilations
 
 29
 It is settled that compilations of facts are copyrightable, even though the facts themselves are not subject to copyright protection. Feist Publications, 499 U.S. at ----, 111 S.Ct. at 1287, 113 L.Ed.2d at 368 (discussing the inherent tension between these well-established propositions). The Copyright Act of 1976 defines a copyrightable compilation as "a work formed by the collection and assembly of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101 (1988). Therefore, section 101 identifies three requirements for a compilation to qualify for copyright protection: "(1) the collection and assembly of preexisting material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." Feist, 499 U.S. at ----, 111 S.Ct. at 1293, 113 L.Ed.2d at 376.
 
 
 30
 The Court in Feist noted that the "selection, coordination, or arrangement" requirement is the key to determining whether a work qualifies as a copyrightable compilation. See Feist, 499 U.S. at ----, 111 S.Ct. at 1294, 113 L.Ed.2d at 377 (explaining that "facts are never original, so the compilation author can claim originality, if at all, only in the way that the facts are presented"). The Court in Feist emphasized that "the originality requirement is not particularly stringent." See Feist, 499 U.S. at ----, 111 S.Ct. at 1294, 113 L.Ed.2d at 377 (explaining that originality means only that a compiler selects or arranges independently and displays some minimal level of creativity, even if the compiler settles upon a selection or arrangement that others have used). In addition, the Court in Feist noted that a copyrightable compilation is protected only to the extent of the author's "original" selection, coordination, or arrangement. See Feist, 499 U.S. at ----, 111 S.Ct. at 1295, 113 L.Ed.2d at 378. Accordingly, this court must first determine what particular elements of BAPCO's selection, coordination, and arrangement of preexisting facts in the 1984 Yellow Pages are sufficiently original to merit copyright protection.
 
 
 31
 II. Original Selection, Coordination, or Arrangement
 
 
 32
 Based on the undisputed facts, the district court concluded that BAPCO performed the following acts of selection, coordination, or arrangement, which were sufficiently original to merit copyright protection: (1) the selection of the geographic scope of businesses to be covered in the directory; (2) the selection of the number of free listings for businesses in the covered area; (3) the selection of only businesses with business telephone service for advertisements in the directory; (4) the selection of a menu of classified headings that would be available for business listings; (5) the selection of the criteria for determining whether a business may advertise under a particular classified heading; (6) the selection of the classified headings that would be recommended to a particular business customer; (7) the selection of customers who would receive on-premise sales contact, telephone sales contact, or no contact; (8) the selection of the dates for the beginning and closing of the sales campaign for advertisements in the directory; and (9) the arrangement of all of the business listings under a particular heading, in alphabetical order. See BellSouth Advertising & Publishing Corp. v. Donnelley Information Publishing, Inc., 719 F.Supp. 1551, 1557-58 (S.D.Fla.1988).
 
 
 33
 The panel agreed that the 1984 Yellow Pages constituted a copyrightable compilation, identifying the following acts of selection, coordination, or arrangement as sufficiently original: (1) selection of the geographic scope of businesses to be included in the directory; (2) selection of a directory close date as a limit on modifications that would be reflected in a pending directory publication; (3) the creation or selection of numerous classified headings that would be available for business listings; (4) the coordination of all the informational components--name, address, and telephone number--of a particular business into one complete business listing; and (5) the arrangement of all coordinated business listings under the appropriate classified headings. See Bellsouth Advertising & Publishing Corp. v. Donnelley Information Publishing, Inc., 933 F.2d 952, 957-58 (11th Cir.1991), vacated and reh'g en banc granted, 977 F.2d 1435 (11th Cir.1992).
 
 
 34
 Donnelley challenges the district court's and panel's holding that BAPCO performed sufficiently original acts of selection, coordination, or arrangement to merit copyright protection for the 1984 Yellow Pages. Donnelley argues that the district court erred in identifying BAPCO's alphabetizing of the listings and classified headings as contributing to the originality of the directory. Donnelley also argues that the district court erred in characterizing BAPCO's decisions to offer one free listing, to include only business telephone service subscribers, and decisions on soliciting advertisements as acts of selection "fixed" in the 1984 Yellow Pages, as opposed to invisible business decisions. In addition, Donnelley argues that the panel erred in identifying BAPCO's coordination of the informational components--name, address, and telephone number--of a particular business as an original act of coordination. Moreover, Donnelley argues that both the district court and the panel erred in identifying BAPCO's selection of a geographic scope, selection of classified headings, and arrangement of all business listings under a particular classified heading as "original" acts of selection or arrangement.
 
 
 35
 BAPCO responds that the district court and panel correctly concluded that BAPCO's acts of selection, coordination, or arrangement were sufficiently original to be copyrightable. BAPCO analogizes the so-called "business decisions" with the techniques that a photographer uses in taking a picture. As the techniques of the photographer affect the photograph, BAPCO argues that the published 1984 Yellow Pages would have been completely different if BAPCO had selected a different geographic scope, permitted residential telephone service subscribers to be listed, chosen a different closing date, elected not to provide a free listing, changed its available menu of classified headings, engaged in different marketing efforts to sell business listings, excluded businesses listings from nearby communities such as Fort Lauderdale, excluded listings of national businesses, or permitted different arrangements between the available classified headings and business listings.
 
 
 36
 Donnelley is correct to assert that the holding in Feist precludes this court from concluding that BAPCO satisfied the originality requirement based on the mere alphabetizing of business listings and classified headings, or based on the mere coordination of the name, address, and telephone number of a particular business into one complete business listing. See Feist, 499 U.S. at ----, 111 S.Ct. at 1297, 113 L.Ed.2d at 380-81 (holding that a telephone company's white pages lack the requisite originality for copyright protection where the telephone company merely published basic subscriber information--name, town, and telephone number--and arranged it alphabetically based on surnames).
 
 
 37
 Donnelley is also correct to assert that the district court erred in characterizing BAPCO's decision to offer one free listing and decisions on the dates and procedures for soliciting advertisements as original acts of "selection." "Selection implies the exercise of judgment in choosing which facts from a given body of data to include in a compilation." Key Publications v. Chinatown Today Publishing Enterprises, Inc., 945 F.2d 509, 513 (2d Cir.1991) (citations omitted). BAPCO's decisions regarding a free listing and solicitation procedures did not entail the exercise of judgment in choosing among facts to be included in its directories. "Selection" is not an appropriate term to describe the choices to include all of the data in a given body of data, on a given date. Instead of acts of selection, these BAPCO's decisions are more closely analogous to ideas or procedures for reliably and profitably collecting facts. As ideas or procedures, BAPCO's decision to offer a free listing and its decisions regarding soliciting advertisements, are not copyrightable. See 17 U.S.C. § 102(b) (providing that no copyright protection for an original work of authorship extends to any "idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work").
 
 
 38
 However, even ignoring these erroneously identified acts of selection, coordination, or arrangement, BAPCO's other acts of selection and arrangement in compiling the 1984 Yellow Pages were sufficient originality to merit copyright protection under Feist.
 
 A. Selection of Classified Headings
 
 39
 The clearest example of BAPCO's original selection is its choice of the classified headings that would be included in the 1984 Yellow Pages. Accord Key Publications, 945 F.2d at 514 (holding that a publisher's selection of 260 different categories, even if including particular categories that have been used in other directories, involved sufficient creativity to contribute to the overall originality of a classified directory). BAPCO selected the approximate 7,000 classified heading in the 1984 Yellow Pages from the 4,700 primary headings and approximately 34,000 related headings in the BAPCO headings book. BAPCO presented the undisputed testimony of Gerald Brown that the BAPCO headings book is not standardized to coincide with the menu of classified headings used in National Yellow Page Sales Association (NYPSA) publications. Moreover, even if BAPCO's selection of classified headings is similar to other NYPSA publications, it would still be copyrightable under Feist so long as BAPCO selected independently. See Feist, 499 U.S. at ----, 111 S.Ct. at 1287, 113 L.Ed.2d at 369 (holding that "originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying").[2]
 
 
 40
 In addition, the testimony of Donnelley's own witness supports the district court's conclusion that BAPCO's selection of headings constituted an original act of selection. Donnelley's corporate representative, Jon Notestein, responded to a question about whether Donnelley created its headings especially for the Donnelley Miami directory, with the following statement: "What we have learned in this business after 99 years is that individual markets may have local terminology that reflect differently in different parts of the country. So, yes, I'm sure we have created some headings, classifications to represent types of business that we didn't normally use in Donnelley in the Mid-west, for example." See Deposition of Jon Notestein, p. 50. In further describing the process of particularizing headings for a specific directory, Notestein explained that Donnelley maintains a list of over 7,000 headings that are generally applied across the country, but "in the end the type of business appears in our directory is a reflection of the marketing and needs of the market and users of the product. It is an ongoing process changing every day." See Deposition of Jon Notestein, p. 51 (also stating that Donnelley probably selected its headings for Miami from "looking at" the 1984 Yellow Pages ).
 
 
 41
 On appeal, Donnelley appears to concede that copyright protection extends to a publisher's selection of which headings to include in a particular classified directory, arguing instead that it did not copy BAPCO's selection of classified headings. Donnelley asserts that its 1985 Miami North directory contains approximately 4,000 headings and that its 1985 Miami South directory contains approximately 4,300 headings, as compared to the 7,000 headings in BAPCO's 1984 Yellow Pages. Even though more relevant to the separate issue of substantial copying, Donnelley's assertion that it independently selected a substantially smaller and distinct "universe" of classified headings underscores the originality, and thus copyrightability of BAPCO's selection of headings.[3]
 
 
 42
 B. Categorizing Businesses Under Classified Headings
 
 
 43
 The originality of BAPCO's arrangement of business listings under a particular classified heading is also clear under the standard definition of "arrangement" in the copyright laws. "Arrangement 'refers to the ordering or grouping of data into lists or categories that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data.' " Key Publications, 945 F.2d at 513-14 (quoting Copyright Office, Guidelines for Registration of Fact-Based Compilations 1 (Rev. Oct. 11, 1989)). In this case, BAPCO presented the undisputed affidavit testimony of its General Manager-Publishing, Bob Johnson, regarding BAPCO's grouping of listings under a particular classified heading. See Exhibit A to Donnelley's En Banc Brief (copy of Affidavit of Bob Johnson ). Because most business subscribers offer multiple product lines, goods, and services, Johnson testified that BAPCO sales representatives were responsible for itemizing the products or services of a business subscriber, determining the degree of importance or profitability to the business, and recommending an appropriate classified heading for listing the business in the 1984 Yellow Pages. Johnson further testified that BAPCO annually updates and publishes its heading book in order to provide sales representatives with a quick-reference of the approximately 34,000 authorized BAPCO "related headings" for making recommendations to businesses about additional listings.
 
 
 44
 Moreover, Johnson's statements about the skill and judgment that BAPCO sales representatives exercise in recommending appropriate related headings is supported in the statistics that he provided about the 1984 Yellow Pages. Johnson testified that the resulting 1984 Yellow Pages included 56,459 free business listings and 49,939 paid listings from a total of 32,559 local, foreign, and national business subscribers. These statistics on total listings and advertisers highlight the fundamental error in the majority's conclusion that BAPCO's grouping of business listings under classified headings is not an original act of arrangement. Using Donnelley's figure of approximately 7,000 classified headings in the 1984 Yellow Pages, it defies logic to conclude that BAPCO's grouping of over 106,398 business listings from 32,559 different businesses, under approximately 7,000 classified headings amounts to no more than mechanical grouping of data. The numbers alone indicate that BAPCO had numerous options for grouping the 106,398 listings among the 7,000 classified headings.
 
 
 45
 Beyond statistics, however, BAPCO presented the district court with conclusive evidence concerning the originality of its groupings of business listings under classified headings. BAPCO attached to Johnson's affidavit a sample page from its heading book, which includes the primary heading of "Bakers-Retail" and related headings including "Biscuits," "Cakes," "Pastries," "Bagels," "Candy & Confectionery," "Caterers," "Cookies & Crackers," "Delicatessens," "Donuts," "Food Products," "Foods-Carry Out," "Grocers-Retail," "Health & Diet Food Products-Retail," "Pies," "Pretzels," "Restaurants," "Sandwiches," "Snack Products," "Wedding Supplies & Services." Although some primary entries on the sample page contain less related headings than the "Bakers-Retail" example, other primary headings contain more related heading options. Hence, the "Bakers-Retail" example provides a representative illustration of the wide-ranging choices that BAPCO sales representatives made in categorizing the 32,559 businesses under the appropriate related headings from the approximately 34,000 options in the heading book. With so many related headings to describe a business principally known as a bakery, BAPCO's arrangement of the listing of a particular bakery under one, two, three, four, or more headings is neither "obvious" nor "practically inevitable" as defined in Feist. See Feist, 499 U.S. at ----, 111 S.Ct. at 1297, 113 L.Ed.2d at 380. Accordingly, the evidence is clear that BAPCO's arrangement was in no sense mechanical. On the contrary, the 1984 Yellow Pages reflects several layers of BAPCO choices on grouping 106,398 business listings under approximately 7,000 classified headings, which BAPCO selected from a heading book containing 4,700 primary entries and 34,000 related headings. Accord Key Publications, 945 F.2d at 514 (holding that a classified publisher's grouping of over 9,000 listings into approximately 260 different categories constituted original arrangement entitled to copyright protection).
 
 
 46
 Donnelley challenges BAPCO's evidence of an original arrangement with repeated assertions that the businesses themselves, not BAPCO, selected the appropriate classified heading or headings with which to describe their businesses. In its reply brief to the panel, Donnelley conceded that if BAPCO supported its "belated allegation that BAPCO selects the headings, there would result a material issue of fact, making summary judgment improper on the issue of infringement." Donnelley Panel Reply Brief at p. 13. The evidence before the district court not only supports BAPCO's so-called "belated allegation," but the only evidence presented to the district court conclusively establishes that BAPCO makes the final decisions on whether to list a business under a particular classified heading.[4]
 
 
 47
 Donnelley does not point to any independent evidence that it presented on the issue, but relies on testimony that it elicited from BAPCO's General Manager-Directory, Gerald Brown, during the October, 1985, preliminary injunction hearing. Specifically, Donnelley relies on Brown's statements that customers generally select additional classified headings in the course of a sales presentation by a BAPCO employee, and his statement that the owner of Havana Welding made the decision to be listed under ten different headings, including "Exporter," with the guidance of a BAPCO sales person. Based on Brown's testimony about a business owner's role and the fact that business owners pay BAPCO for the additional listings, Donnelley argues that "it defies logic to even suppose that [businesses] would leave to a directory publisher any discretion to decide what business they are in."
 
 
 48
 Donnelley's argument completely ignores the undisputed evidence that BAPCO presented on the editorial role of its Heading Committee in arranging business listings under a particular classified heading.[5] In addition to discussing the role of a BAPCO sales representative in recommending related headings to businesses, Gerald Brown testified via deposition that BAPCO's Heading Committee had the final responsibility for deciding whether a requested classified heading was appropriate for inclusion in the 1984 Yellow Pages. Brown further testified that a business's willingness to pay for a listing under a particular classified heading did not influence the Heading Committee's decision on whether to approve the proposed new heading. Moreover, during the October, 1985, preliminary injunction hearing, Brown responded to questions about whether BAPCO allowed businesses to make final decisions on a particular heading based on their willingness to pay for the advertisement. In response to a question on redirect, Brown testified that BAPCO would not allow businesses to select classified headings under a particular category that is totally incorrect, responding to the extreme example of a butcher who asked to be listed as a plumber. See 5SR2-4, p. 133. On recross-examination, Brown responded to a more subtle example stating that BAPCO would allow a butcher to be listed as a delicatessen only if the butcher was in fact a delicatessen, regardless of the butcher's willingness to pay for a full-page ad under the "Delicatessen" heading. See 5SR2-4, pp. 133-34. Donnelley fails to point to any evidence contradicting Brown's testimony regarding the final editorial authority of the Heading Committee on whether a business would be grouped under a particular classified heading.
 
 
 49
 Therefore, the uncontroverted testimony in this case proves that BAPCO performed an original act of arrangement in deciding how to group appropriately the 106,398 business listings from 32,559 businesses, under the approximate 7,000 classified headings in the 1984 Yellow Pages.
 
 
 50
 C. Selection of Only Businesses with Business Telephone Service
 
 
 51
 BAPCO's selection of only businesses with business telephone service, as opposed to residential service, is also an act of selection contributing to the originality of the 1984 Yellow Pages. As noted earlier, selection involves "the exercise of judgment in choosing which facts from a given body of data to include in a compilation." See Key Publications, 945 F.2d at 513. BAPCO exercised such judgment in choosing only business service subscribers from the body of data including both business and residential subscribers for inclusion in the 1984 Yellow Pages. The originality is BAPCO's choice is amply demonstrated in the fact that Donnelley, unlike BAPCO, would accept listings and advertising from residential telephone service subscribers in addition to business telephone service subscribers. For example, the Assistant Vice-President and General Manager of the Southeast Operation of Donnelley Information Publishing, Louis Sudholz, testified about the disparate treatment of a hypothetical prospective customer, "John, the painter." Sudholz testified that Donnelley, unlike BAPCO, would include "John, the painter" in its directory, regardless of Donnelley's discovery that John does not have a business telephone and operates out of a shed in his backyard. See 5SR2-4, pp. 194-95. Based on the different choices of two competing classified publishers, it is clear that BAPCO's selection of only businesses with business telephone service represents an exercise of judgment that is in no sense automatic or dictated by functional considerations. Hence, the record also supports the district court's holding that BAPCO's selection of only business telephone subscribers for inclusion in its 1984 Yellow Pages constitutes an original act of selection contributing to the copyrightability of its compilation.
 
 
 52
 D. Selection of a Geographic Area to be Covered Comprehensively
 
 
 53
 Although a closer question, BAPCO's geographic scoping also represents an original act of selection. BAPCO asserts that its selection of a geographic scope refers to a choice about what geographic region would be covered comprehensively in the 1984 Yellow Pages. BAPCO argues that its selection of a geographic area is not determined simply based on the scope of a white-page directory for the same community, but is instead selected based on BAPCO's evaluation of the shopping habits and desired shopping areas of consumers within a white-pages community. Donnelley responds that geographic scoping merely refers to BAPCO's decision about the geographic area for free distribution of copies of its 1984 Yellow Pages. Donnelley further asserts that BAPCO did not, in fact, limit advertisements in its directory to businesses in a particular area. Based on Bob Johnson's affidavit testimony that the 1984 Yellow Pages contains advertisements from 1,772 businesses in nearby cities and from 2,215 national businesses, the evidence supports Donnelley's assertion that BAPCO did not limit classified listings to only businesses in a certain geographic area. Johnson's testimony also demonstrates that BAPCO solicited, not selected, the advertisements from national businesses and businesses in nearby cities. However, the fact that BAPCO did not limit its 1984 Yellow Pages exclusively to greater Miami businesses does not dispose of the issue, because BAPCO's claim of copyrightability is based on its selection of an area, not individual businesses, to be covered comprehensively, not exclusively.
 
 
 54
 The evidence before the district court supports its conclusion that geographic scoping is an original act of selection. Besides BAPCO's evidence, Donnelley presented evidence on the uniqueness of its different scoping choice to cover the greater Miami area in two North and South Miami regions. In addition, Donnelley elicited testimony from Louis Sudholz on Donnelley's decision to cover the geographic region between Dallas and Fort Worth in a "Mid-City" directory. Based on such evidence of how classified publishers could easily select geographic regions that do not strictly follow the boundaries of cities, it is clear that the selection of a geographic region is not "practically inevitable." See Feist, 499 U.S. at ----, 111 S.Ct. at 1297, 113 L.Ed.2d at 380 (recognizing that the alphabetizing of names in a white pages is an age-old practice that is unoriginal and practically inevitable).
 
 
 55
 The evidence before the district court also compels a conclusion that the geographic scoping of a classified directory is not an "obvious" act of selection. See Feist, 499 U.S. at ----, 111 S.Ct. at 1297, 113 L.Ed.2d at 380 (describing a white-page publisher's selection of basic information--name, town, and telephone number--as "obvious" and lacking sufficient creativity to make it original). On this point, BAPCO presented "Donnelley Directory Publishing Start-Up Business Plan October 21, 1984," which discussed Donnelley's own geographic scoping decisions as being based on "extensive research [leading Donnelley] to scope differently from its competitors." See 6SR12-34, Volume IV--Appendix to Summary Memorandum of BellSouth Advertising & Publishing Corporation, . DM207045 (stating that Donnelley generally will scope to cover areas of two or more telco directories, and stating that "more logical scoping is intended to be a key selling point for [Donnelley]"). Therefore, even though Donnelley now argues that geographic scoping represents an obvious decision lacking a modicum of creativity, the evidence before the district court was uncontroverted that geographic scoping results from thoughtful analysis of research on shopping habits and analysis of how to distinguish one directory from its competitors.[6] Such thoughtful selection is sufficient under Feist to contribute to the originality of the 1984 Yellow Pages. See Feist, 499 U.S. at ----, 111 S.Ct. at 1294, 113 L.Ed.2d at 377 (explaining that "the originality requirement is not particularly stringent").
 
 
 56
 In sum, the record on this case demonstrates that BAPCO performed at least four original acts of selection and arrangement: (1) the selection of 7,000 classified headings; (2) the arrangement of 106,398 business listings, from 32,559 businesses under the 7,000 classified headings; (3) the selection of only businesses with business telephone service, as opposed to businesses having either business service or residential service; and (4) the selection of a geographic area to be covered comprehensively in the 1984 Yellow Pages. Accordingly, I would hold that BAPCO performed four acts of selection or arrangement which are sufficiently original to merit copyright protection. The analysis of BAPCO's infringement claim, however, does not end with a finding of originality. This court must next determine whether Donnelley copied those constituent elements of selection and arrangement which are copyrightable.
 
 
 57
 III. Substantial Copying of BAPCO's Original Selection or Arrangement
 
 
 58
 Because the copyright in a factual compilation is "thin," a plaintiff must prove "substantial similarity" between the defendant's compilation and the original elements of the plaintiff's compilation. Key Publications, 945 F.2d at 514 (adopting the "substantial similarity" test for infringement, and rejecting arguments that Feist requires a subsequent compiler to produce an "exact replica" of the copyrighted compilation); see also Majority Opinion at n. 21 (citing favorably the Key Publications test); Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801, 810-11 (11th Cir.1985) (applying the "substantially similarity" test). Therefore, in order for BAPCO to prevail on its infringement claim, it must prove that Donnelley substantially appropriated the particular elements of selection or arrangement that are original. Based on the previous discussion identifying those elements of selection or arrangement that are copyrightable, BAPCO must prove that Donnelley substantially appropriated BAPCO's selection of classified headings, arrangement of business listings under classified headings, selection of only businesses with business telephone service, or selection of a geographic area to be covered comprehensively.
 
 
 59
 A proper analysis of whether Donnelley substantially appropriated BAPCO's original selection or arrangement requires this court to analyze separately each of the three acts of copying at issue in this case. The district court concluded that Donnelley engaged in the following three acts of copying: (1) hiring Appalachian Computer Services, Inc. (Appalachian), a data entry company in London, Kentucky, to key BAPCO's compilation into a computer database; (2) using the computer database to print out sales lead sheets that represented a reproduction of substantially the entire 1984 Yellow Pages in inverted or crisscross form; and (3) publishing the 1985 Miami North and 1985 Miami South directories based on the information copied into the computer database and onto the sales lead sheets. See BellSouth, 719 F.Supp. at 1558-59. Similarly, this court should evaluate each alleged act of copying separately.[7]
 
 A. Computer Database
 
 60
 Donnelley does not dispute that it obtained copies of the 1984 Yellow Pages, separated and mounted each sheet individually, and assigned a classified heading code, advertising code, and directory code for every business listing. It is also undisputed that Appalachian keyed the following information into a computer database: name, address, telephone number, code corresponding to a classified heading, code corresponding to the unit of advertising, and a code for the directory from which the listing came. Appalachian stored this information on magnetic tape and sent it to Donnelley for reproduction in the form of sales lead sheets. The only factual dispute concerning the creation of the computer database derives from Donnelley's assertion that Appalachian entered a code corresponding to a previously chosen Donnelley classified heading, as opposed to a code corresponding to the BAPCO heading directly next to each code.
 
 
 61
 The record support's Donnelley's version of the alleged factual dispute. Several Donnelley employees testified that Appalachian keyed-in heading codes that corresponded to headings in a Donnelley heading book. For example, Gary Johnson explained that
 
 
 62
 if we found a heading on our database that had a heading code which was similar or the same meaning as the BAPCO heading, we used our heading, the Donnelley support file heading. We didn't directly copy the heading from the BAPCO book. We used our heading. This heading code is a Donnelley heading code that applies to a support file, mechanized support file, that we maintain in Terre Haute [, Indiana, a Donnelley Publishing Center].
 
 
 63
 Deposition of Gary Johnson, at p. 143. Johnson further testified that he sent Appalachian a "Donnelley heading book" and "asked Appalachian to use [the Donnelley heading book] and find alike [sic] or similar, in our book to the BAPCO book." Deposition of Gary Johnson, at p. 254. Johnson's testimony, along with that of other Donnelley employees, resolves the alleged factual dispute and makes it clear that Appalachian keyed a heading code that corresponded to a heading in the Donnelley heading book. But, the mere fact that Appalachian entered codes that corresponded to a heading in Donnelley's own heading book does not resolve the issue.
 
 
 64
 The relevant question is whether Appalachian entered codes that corresponded to Donnelley's previously selected menu of headings for particular use in its Miami directories, not whether Appalachian entered codes corresponding to a heading in a Donnelley heading book that Donnelley uses for compiling directories generally. As discussed earlier, the evidence is undisputed that BAPCO selected approximately 7,000 classified headings from those in its heading book containing 4,700 primary entries and approximately 34,000 authorized related headings. Therefore, the originality of BAPCO's selection of headings is based on its selection of approximately 7,000 headings for inclusion in the 1984 Yellow Pages, not the selection of the nearly 40,000 authorized headings in the BAPCO heading book. In considering whether Donnelley copied BAPCO's selection of headings from the 1984 Yellow Pages, Johnson's testimony makes it apparent that Donnelley did not previously select headings from its own heading book for inclusion in its 1985 Miami North and 1985 Miami South directories. Instead, Johnson testified that Donnelley merely sent Appalachian its heading book so that Appalachian could assign a code to each BAPCO heading that corresponded to a like or similar heading in the Donnelley heading book.
 
 
 65
 Johnson's testimony is bolstered in the testimony of Jon Notestein, who made the following statement in response to a question about how Donnelley selected classified headings that reflected needs of the market and users in Miami: "They were probably created by looking at the directories representing Miami, [the BAPCO directory]." See Deposition of Jon C. Notestein, pp. 50-52; see also Donnelley En Banc Reply Brief, p. 19 n. 14 (conceding that Notestein testified that Donnelley used the 1984 Yellow Pages in order to refine its preexisting set of headings for use in Florida).
 
 
 66
 Therefore, even resolving the alleged factual dispute regarding Appalachian's coding of headings in favor of Donnelley's version, Johnson's and Notestein's testimony makes it clear that Donnelley did not previously select a universe of headings for particular use in its Miami directories. Instead, Donnelley copied BAPCO's selection of headings with what can only be described as a high-tech copying process. Donnelley's high-tech copying involved Appalachian keying codes rather than the words of BAPCO headings into a database, from which the wording of the BAPCO headings could be reconstructed later using the Donnelley heading book as a decoder.
 
 
 67
 Besides the evidence showing that Donnelley substantially appropriated BAPCO's selection of headings, Donnelley's stipulation regarding what information Appalachian keyed into the computer database leaves no factual dispute that Donnelley also substantially appropriated BAPCO's other original acts of selection and arrangement. As previously discussed, BAPCO's original acts of selection or arrangement included the selection of approximately 7,000 headings for particular use in the 1984 Yellow Pages; the arrangement of 106,398 listings from 32,559 businesses under the approximately 7,000 classified headings; the selection of only businesses with business telephone service; and the selection of a geographic area to be covered comprehensively in the directory. It is undisputed that Appalachian keyed into the computer database every business listing with a corresponding heading code and a code indicating the directory source for every listing in the 1984 Yellow Pages.
 
 
 68
 Although the keying of each code in isolation would amount to the lawful copying of facts, Appalachian's grouping of the business listing with an associated heading code and a directory code amounts to the appropriation of virtually all of BAPCO's original acts of selection and arrangement. That is, Donnelley copied BAPCO's selection of headings based on Appalachian's keying of a heading code, even if it corresponded to headings in Donnelley's own heading book, for virtually every heading used in the 1984 Yellow Pages. Donnelley copied BAPCO's arrangement of business listings under a particular classified heading based on Appalachian's grouping of the business listing data with a heading code that corresponded to a heading like or similar to BAPCO's. Donnelley copied BAPCO's selection of only businesses with business telephone service based on Appalachian's keying of every business listed in the 1984 Yellow Pages. In addition, Donnelley copied BAPCO's selection of a geographic area based on Appalachian's grouping of the business listing data and the code indicating the directory source.
 
 
 69
 Because the keyed information was stored in or on some material object until later printed on the sales lead sheets, Donnelley's creation of the computer database represents an act of "copying" as defined in the Copyright Act. See 17 U.S.C. § 101 (defining a copy as a material object "in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device"). Accordingly, I would hold that Donnelley's substantial appropriation of BAPCO's original acts of selection or arrangement in creating the computer database, represented an act of copyright infringement.
 
 B. Sales Lead Sheets
 
 70
 Donnelley's substantial appropriation of BAPCO's original act of selection or arrangement is also apparent in the printed sales lead sheets. As discussed previously, Donnelley stipulated in the district court that it prepared the sales lead sheets from the following information obtained from the 1984 Yellow Pages: (1) telephone number--under the first column; (2) name--under the second column; (3) address--under the third column; (4) kind of business--under the fourth column; and (5) unit of advertising--under the fifth column. A visual examination of the printed sales lead sheets shows that the sales lead sheets also contain rate information under the sixth column and a directory code under the seventh column. Because it is uncontroverted that the sales lead sheets represented merely a printed version of the same information that Appalachian keyed into the computer database, the previous analysis of how Donnelley substantially appropriated BAPCO's original selection or arrangement in creating the database applies equally to its printing of the sales lead sheets. Hence, I would also hold that Donnelley's printing sales lead sheets using the information already copied into the computer database, represented a second act of copyright infringement.
 
 
 71
 Even though a discussion of the sales lead sheets necessarily turns on analysis of the information keyed into the computer database, the printed sales lead sheets have independent significance because the sales lead sheets, not the actual directories, constituted the chief visual evidence of copying in the district court. In the district court, Donnelley stipulated that the seven lead sheets attached to BAPCO's motion for preliminary injunction were representative of all the thousands of sales lead sheets that Donnelley created. Donnelley now attempts to retreat from its concession concerning the representativeness of the sales lead sheets and to retry this case based on a visual comparison of the 1984 Yellow Pages and the 1985 Miami North and 1985 Miami South directories. In its En Banc Reply Brief, Donnelley responds to BAPCO's assertions of substantial similarity based on the seven lead sheets with the following argument: "BAPCO bases this assertion entirely on a chart drawn from just seven of the thousands of lead sheets produced by Donnelley for Miami. However, BAPCO's chart 'conclusively demonstrates' only that a small sample can produce a misleading result." See Donnelley En Banc Reply Brief, p. 22 (citations omitted). Donnelley continues its response with its newly created chart comparing the headings in the 1984 Yellow Pages and those used in the 1985 Miami North and 1985 Miami South directories.
 
 
 72
 Donnelley's arguments are fatally flawed in that they rely on a visual comparison of the actual directories, which Donnelley admits that it only recently, on January 27, 1993, moved for leave to place physical copies of the three directories in the record on appeal. See Donnelley En Banc Reply Brief, p. 22 n. 16. Likewise, Donnelley failed to present the chart comparing the headings in the three directories to the district court, attaching it for the first time as an appendix in its En Banc Reply Brief. See Donnelley En Banc Reply Brief, p. 22 n. 17 (explaining the results of its new analysis as indicated in Appendix A of the En Banc Reply Brief).[8]
 
 
 73
 Unlike Donnelley, BAPCO did present the district court with a comparative analysis of the seven lead sheets showing the virtual identity between BAPCO headings and Donnelley headings. BAPCO presented the affidavit testimony of Barbara Wiggs, who explained her findings on the similarities between information on the sales lead sheets and that in the 1984 Yellow Pages. Based on line-by-line comparisons of the sales lead sheets to the 1984 Yellow Pages, Wiggs concluded that "the listing information on the attached Donnelley Sales Lead sheets were identical to the 1984 Yellow Pages directories, except for a small number of very minor discrepancies." See 6SR10-17, pp. 11-12, Affidavit of Barbara J. Wiggs, in Volume 1--Appendix to Summary Memorandum of Bellsouth Advertising & Publishing Corporation. Specifically, Wiggs listed her findings of complete identity except for the following entries: (1) Evian associated with the heading "Water Coolers" instead of "Water Coolers-Renting"; (2) Star Appliances being associated with the heading "Air Conditioning-Room Units" instead of "Air Conditioning Equipment--Room Units"; (3) Star Appliances being associated with the heading "Television Dealers--Retail" instead of "Television & Radio--Dealers"; (4) Star Appliances being associated with the heading "Vacuum Cleaners--YSTEM Household--Dealers" instead of "Vacuum Cleaners--Household--Dealers"; (5) Star Appliances being associated with the heading "Vacuum Cleaners--S Household--Dealers" instead of "Vacuum Cleaners--Household--Dealers"; and (6) Audiotron-High Fidelity Corp. being associated with the address of "145 S.W. 52nd Avenue" instead of "145-147 S.W. 52nd Avenue Second Floor." Wiggs's conclusion that the discrepancies were "minor" is entirely reasonable in light of the fact that the seven lead sheets contain information concerning seven different businesses, appearing under forty different headings in the 1984 Yellow Pages, for a total of sixty-eight listings, averaging five different headings and ten listings. It is also significant to note that the headings on the lead sheets ranged from "Gas--Industrial & Medical Cylinder & Bulk" to "Antiques--Repairing & Restoring." The identity between the headings on the lead sheets and those in the 1984 Yellow Pages included even the hyphens and the ampersands.
 
 
 74
 Based on Donnelley's stipulation that the seven sales lead sheets were representative and Wiggs's testimony on the virtual identity between the headings and other information on the sales lead sheets and that in the 1984 Yellow Pages, the chief visual evidence in the district court conclusively shows that Donnelley's printing of the sales lead sheets represented a second act of substantial appropriation of BAPCO's original acts of selection or arrangement.
 
 C. The Donnelley Directories
 
 75
 As previously discussed, only a small portion of the arguments and evidence before the district court related to a visual comparison of published copies of the actual directories. In its opinion, the district court references a comparison of the directories only three times. The first reference is the district court's statement that "a comparison of the two (2) directories reveal that Donnelley used a format nearly identical to that used by BAPCO. See Exhibit P and P Enlarged to BAPCO's Brief." See BellSouth, 719 F.Supp. at 1559. In their February, 1993, letters to the clerk of this court regarding requests for certain portions of the record, both parties agreed that the district court did not refer to the BAPCO and Donnelley directories when referencing Exhibit P and P Enlarged.
 
 
 76
 In fact, Exhibit P and P Enlarged are copies of a sales solicitation form of Associated Telephone Directory Publishers that this court reproduced as Appendix A in Southern Bell Tel. & Tel. v. Associated Tel. Directory Publishers, 756 F.2d 801, 813-14 (11th Cir.1985). Donnelley stated in its February 22, 1993, letter to the clerk that "Exhibits P and P enlarged do not involve any yellow pages directory at issue in the present appeal" and that the district court cited the exhibits erroneously. BAPCO responded that the district court correctly referred to the exhibits from the Southern Bell opinion, but only for the limited purposes of showing what the Southern Bell court considered to be a copyrightable format, and showing that Donnelley's format as evidenced in the sales lead sheets was nearly identical to that of BAPCO. Regardless of why the district court referenced Exhibits P and P Enlarged, the fact that the parties agree that the district court was not referencing pages from the BAPCO or Donnelley directories makes it uncontroverted that the district court was not stating that it performed page-by-page visual comparison of the 1984 Yellow Pages and the Donnelley directories.
 
 
 77
 The second suggestion that the district court visually compared the disputed directories, is the district court's discussion of the evidence of "common errors." See BellSouth, 719 F.Supp. at 1559 & n. 23. But, in discussing the common errors in the three directories, the district court referenced pages from the directories that BAPCO attached to the Second Affidavit of Barbara J. Wiggs. See BellSouth, 719 F.Supp. at 1559 n. 23. The district court did not cite pages in complete published copies of the directories. Similarly, in concluding that the directories are substantially similar, the district court cites the Barbara Wiggs affidavit and Gerald Brown testimony rather than pages from the published directories. See BellSouth, 719 F.Supp. at 1559-60.
 
 
 78
 Therefore, none of the references in the district court's opinion provide a basis for this court to engage in side-by-side comparisons of all pages in the 1984 Yellow Pages with those in the 1985 Miami North and 1985 Miami South directories. It is only possible to conclude that the district court examined the pages of the directories that BAPCO attached to the Second Affidavit of Barbara J. Wiggs. Because Donnelley failed to present its own comparative analysis of pages from the actual directories and also failed to place physical copies of the directories in the record until January, 1993, this court is required to limit its determination on the substantial similarity of the directories to those pages attached to the Second Affidavit of Barbara J. Wiggs, and only to the extent of Wiggs's comparative analysis.
 
 
 79
 The district court relied on Wiggs's analysis of pages from the directories as support for the following conclusion: "Although Donnelley's directory is not identical to BAPCO's directory, the material was copied and used to produce a directory substantially similar in both content and format." See BellSouth, 719 F.Supp. at 1559-60 (citing Affidavit of Barbara Wiggs and October, 1985, testimony of Gerald Brown). In her affidavit, Wiggs identified twenty-five errors that were common to both the 1984 Yellow Pages and the Donnelley directories. See 6SR11-18, Second Affidavit of Barbara J. Wiggs, pp. 2-19. For example, Wiggs explained that BAPCO incorrectly listed Fort Lauderdale News under the heading "Balancing Equipment" in the 1984 Yellow Pages, and that Donnelley's 1985 Miami North directory also lists Fort Lauderdale News under a "Balancing Equipment" heading. See BellSouth, 719 F.Supp. at 1559 n. 23 (also noting the example of the common erroneous listing of "Flash Courier Systems" even though the subscriber's telephone was disconnected before January 1, 1984).
 
 
 80
 The presence of common errors is "one of the most significant evidences of infringement." Callaghan v. Myers, 128 U.S. 617, 662, 9 S.Ct. 177, 190, 32 L.Ed. 547 (1888). Based on the earlier conclusions that the 1984 Yellow Pages constitutes an original selection and arrangement of facts that is copyrightable, Wiggs's testimony regarding the presence of common errors is relevant to rebut Donnelley's repeated assertions that it used the 1984 Yellow Pages "only to ascertain the fact revealed by BAPCO's heading--the kind of business carried on by the listed firm--so as to enable Donnelley to classify that firm in its own system of classification." See Donnelley En Banc Reply Brief at p. 20; see also, Donnelley En Banc Brief at p. 12. Donnelley's assertions that it independently classified businesses using its own heading scheme is wholly unbelievable when one considers the statistical improbability of two publishers independently classifying the same newspaper as a "Balancing Equipment" dealer. Therefore, the presence of the common errors in the published directories is significant evidence that Donnelley substantially appropriated BAPCO's original arrangement of business listings under particular classified headings.
 
 
 81
 As further evidence of Donnelley's substantial appropriation of BAPCO's grouping of listings under particular headings, Wiggs's affidavit included a heading comparison based on a random selection of Donnelley headings and a comparison of the listings appearing under those headings with the listings appearing under the corresponding headings in the 1984 Yellow Pages. BAPCO presented the district court with the following chart summarizing Wiggs's findings regarding the percentage of correlation between the listings under particular headings in the Donnelley directories and those in the 1984 Yellow Pages:
 
 
 82
 Heading North Miami South Miami
--------------------------------- ------------------------
"Bail Bonds" 68% 55%
"Boxes, Corrugated & Fiber" 86% 100%
"Ceilings" 64% 50%
"Driving Instruction" 72% 73%
"Engineers--Civil" 88% 86%
"Furniture--Outdoors" 63% 70%
"Gold, Silver & Platinum Dealers" 95% 85%
----------
 
 
 83
 See 6SR5-3 Reply to Donnelley's Memorandum in Opposition to Motion for Partial Summary Judgment on Copyright Infringement by Bellsouth Advertising & Publishing Corporation and Memorandum in Opposition to Donnelley's Copyright Partial Summary Judgment Motion, p. 40 (March 6, 1986).
 
 
 84
 As the chart indicates, Wiggs found a high (averaging seventy-five percent) statistical correlation of listings under particular headings when comparing the 1984 Yellow Pages with the Donnelley directories. Donnelley did not respond with its own correlation analysis, and thus, Wiggs's findings represent further undisputed evidence that Donnelley's published directories contain a substantially similar arrangement of business listings under particular classified headings. Accord see Key Publications, 945 F.2d at 515, 517 (finding no substantial similarity based on the lack of any evidence that the defendant copied an entire category of the plaintiff's directory, but explaining that a finding of infringement would succeed if the defendant had exactly duplicated a substantial designated portion of the plaintiff's directory such as all of the listings of professionals such as medical doctors, lawyers, accountants, engineers, and architects).
 
 
 85
 To the extent that Wiggs's analysis of the directories was misleading, it is an elementary rule on summary judgment that the burden shifted to Donnelley to produce its own comparative analysis of the published directories in order to rebut the undisputed evidence of substantial similarity in Wiggs's affidavit. See United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (recognizing that the burden on summary judgment shifts to the non-moving party once the moving party has met its initial responsibility of showing the absence of a triable issue of fact, and that the moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of the case); Fed.R.Civ.P. 56(e). As a non-moving party opposing a motion for summary judgment which BAPCO supported with affidavits, Donnelley could not simply rely on legal conclusions or evidence which would be inadmissible at trial in order to meet its burden of coming forward with relevant and competent evidence. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991).
 
 
 86
 In the district court, Donnelley failed to respond to the evidence in Wiggs's affidavit showing substantial similarity in the arrangement of listings under headings in the published directories. Contrary to Donnelley's assertions to the en banc court, Donnelley also failed to present evidence to the district court that the selection of headings in its published directories was substantially smaller and different from those in the 1984 Yellow Pages. Compare Donnelley En Banc Brief at p. 12 and BAPCO En Banc Brief at p. 3 (attaching as "Exhibit 2" those portions of the record that Donnelley cites). Instead of responding to BAPCO's evidence in the district court, Donnelley waited until January, 1993, before moving to place the published directories in the record. See Donnelley En Banc Reply Brief p. 22 n. 16. Donnelley also waited until its En Banc Reply Brief before presenting a comparative analysis of the heading structure in the published directories. See Donnelley En Banc Reply Brief, pp. 22-23 & n. 17. Stated simply, Donnelley waited too late to meet its burden of presenting competent evidence to oppose BAPCO's motion for summary judgment. Because Wiggs's affidavit represented the only evidence before the district court concerning the substantial similarity of the published directories, I would affirm the district court's conclusion that Donnelley substantially appropriated BAPCO's original acts of selection and arrangement when publishing the 1985 Miami North and 1985 Miami South directories.[9]
 
 
 87
 In sum, the uncontroverted evidence before the district court shows that Donnelley substantially appropriated BAPCO's original selection and arrangement in the 1984 Yellow Pages with three separate acts of copying: (1) keying-in that selection and arrangement into the computer database; (2) printing the sales lead sheets from the data in the computer database; and (3) using the computer database and the sales lead sheets to publish the Donnelley directories with a substantially similar selection of headings and substantially similar arrangement or grouping of listings under particular headings. Accordingly, I would affirm the judgment of the district court granting summary judgment in favor of BAPCO on all three claims that Donnelley infringed its compilation copyright in the 1984 Yellow Pages.[10]
 
 
 88
 Because the majority reaches the opposite result based on an utter failure to analyze the evidence presented to the district court under the controlling legal principles announced in Feist, and also based on an unwarranted departure from well-established rules limiting this court's review to arguments and evidence presented in the district court, I must respectfully DISSENT.
 
 
 
 *
 Honorable Phyllis A. Kravitch, Honorable R. Lanier Anderson, III, Honorable Emmett Ripley Cox and Honorable Joel F. Dubina did not participate in this decision
 
 
 [1]
 Feist, 499 U.S. at ----, 111 S.Ct. at 1289
 
 
 [2]
 The code corresponding to the type of advertising appearing in the BAPCO directory indicated only the unit of advertising purchased. Donnelley did not record, nor was alleged to have recorded, information regarding the graphic appearance or page location of the advertising material, nor did it copy facts concerning individual businesses, such as product lines, services, hours of operation, contained in the advertisements themselves
 
 
 [3]
 BAPCO registered its claim of copyright (attached to this opinion as Appendix A) for the "entire text and compilation" of both volumes of its 1984 Miami yellow pages directory. R1-1-Ex. D. It was upon this registration that BAPCO initiated its action for infringement. See 17 U.S.C. § 411(a) ("[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title.")
 
 
 [4]
 The district court granted BAPCO's motion for summary judgment on Donnelley's antitrust counterclaim, but denied BellSouth and Southern Bell's motion for summary judgment on the antitrust counterclaim. The only issue presented by this appeal is the district court's resolution of the copyright infringement claims
 
 
 [5]
 In granting summary judgment in favor of BAPCO, the district court rejected Donnelley's fair use and antitrust, or misuse of copyright, affirmative defenses as a matter of law. Because we hold that summary judgment should have been granted in favor of Donnelley on BAPCO's copyright claim, we do not reach the issue of whether Donnelley's defenses were properly rejected on summary judgment
 
 
 [6]
 The judgment of the district court was affirmed by a panel of this court, but was subsequently vacated by a grant of rehearing en banc. Bellsouth Adv. & Pub. Corp. v. Donnelley Info. Pub., Inc., 933 F.2d 952 (11th Cir.1991), vacated and reh'g en banc granted, 977 F.2d 1435 (11th Cir.1992)
 
 
 [7]
 See 17 U.S.C. § 102(b)
 
 
 [8]
 Moreover, "[o]riginality is a constitutional requirement" for copyright protection implicit in the grant of power to Congress to "secur[e] for limited Times to Authors ... the exclusive Right to their respective Writings." Feist, 499 U.S. at ----, 111 S.Ct. at 1288 (quoting U.S. Const. art. I, § 8, cl. 8)
 
 
 [9]
 Section 101 of the Copyright Act of 1976 defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101
 
 
 [10]
 In confirming originality as the focus of copyright protection, the Court rejected an alternative theory to justify the protection of factual compilations. Relying upon a doctrine known alternatively as "sweat of the brow" or "industrious collection," some courts had extended copyright protection to every element of a factual compilation based on the labor expended by the author in compiling the constituent facts. By extending copyright protection in a compilation beyond the author's original selection, arrangement, and coordination, this line of cases "eschewed the most fundamental axiom of copyright law--that no one may copyright facts or ideas." 499 U.S. at ----, 111 S.Ct. at 1291
 
 
 [11]
 Because of the parties' concession, we do not consider whether BAPCO's yellow pages directory, taken as a whole, is copyrightable
 
 
 [12]
 17 U.S.C. § 102(a)
 
 
 [13]
 While the listings in BAPCO's yellow pages required somewhat more organization and arrangement than the white pages directory considered in Feist, BAPCO's claim of "originality" must be resolved by comparison to other business telephone directories. BAPCO did not deviate from the arrangement of the typical business directory, which employs an alphabetical list of headings to describe the various types of business and then alphabetizes the listings under the appropriate headings
 Applying Feist, the Second Circuit declined to extend copyright protection to the selection and arrangement of certain charts displaying the results of horse racing. Victor Lalli Enters. v. Big Red Apple, Inc., 936 F.2d 671, 673-74 (2d Cir.1991). "The format of the charts is a convention: Lalli exercises neither selectivity in what he reports nor creativity in how he reports it." Id. at 673. Similarly, the Ninth Circuit rejected a claim that two automobile catalogs listing replacement radiators and associated parts were substantially similar. Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, 777 F.2d 485, 491 (9th Cir.1985). Although both works were arranged into three sections (an illustrations section, an original equipment manufacturer section, and an applications section), the court found that this arrangement was obligatory for a useful radiator parts catalog. "[T]he fewer the methods of expressing an idea, the more the allegedly infringing work must resemble the copyrighted work in order to establish substantial similarity." Id. A subsequent collector is not required to arrange its compilation in a fashion not usable by those for whom it is intended. Id. at 492. The format of a typical business telephone directory is even more obvious and well established than the radiator catalogs at issue in Cooling Systems.
 
 
 [14]
 See Kern River Gas Transmission Co. v. Coastal Corp., 899 F.2d 1458, 1463-64 (5th Cir.) (applying merger doctrine where idea of locating pipeline along certain route was inseparable from expression of the route on a topographical map), cert. denied, 498 U.S. 952, 111 S.Ct. 374, 112 L.Ed.2d 336 (1990); see also Educational Testing Services v. Katzman, 793 F.2d 533, 539 (3d Cir.1986); Toro Co. v. R & R Products Co., 787 F.2d 1208, 1212 (8th Cir.1986)
 
 
 [15]
 In Matthew Bender & Co. v. Kluwer Law Book Publishers, Inc., 672 F.Supp. 107 (S.D.N.Y.1987), the court considered the application of the merger doctrine to a claim of copyright in a system of charts displaying information regarding the amount of recovery in previous personal injury cases. Both the plaintiff's work and that of the alleged infringer divided the cases into chapters corresponding to the part of the body injured and further divided the cases within each chapter based on whether the recovery was a result of a settlement, or an "adequate," "inadequate," or "excessive" award. 672 F.Supp. at 108. Each work listed the cases according to forum state, arranging awards from the same state from largest to smallest amount. In both collections, information regarding each case was organized into categories for amount, case name, plaintiff, event, injury, and further relevant data. The court rejected the plaintiff's claim of copyright, concluding that the plaintiff's work employed one of the few practical and useful means of organizing data regarding personal injury awards. The idea and the expression of such a work thus "merged." Id. at 109-10. Further, the information selected for display about each case was obvious and did not demonstrate the original selection, arrangement or coordination required for copyright protection. Id. at 112; see also Coates-Freeman Assocs., Inc. v. Polaroid Corp., 792 F.Supp. 879, 883-84 (D.Mass.1992) (Placement of decisionmaking steps on chart purporting to categorize leadership styles was not a copyrightable feature where selection of those particular steps out of a universe of very limited options resulted in merger of any creativity into the basic idea of the chart)
 
 
 [16]
 Significantly, BAPCO registered no claim of copyright in the glossary of terms used to describe the types of businesses represented by its listings. BAPCO claims that Donnelley infringed its putative copyright in its directory (the only claim of copyright before the court) by somehow copying the directory onto the sales lead sheets (Appendix B). This argument exemplifies the fundamental misconception of the nature and scope of a compilation copyright. A comparison of the Donnelley sales lead sheets and the BAPCO directory pages (Appendix C) manifests no substantial similarity as to those copyrightable elements of a compilation. The dissent continues to confuse and merge the copying of uncopyrightable data with the replication of the copyrightable elements of a compilation
 
 
 [17]
 Despite the dissent's belief to the contrary, our opinion is based on the evidence that was before the district court, including a number of sales lead sheets (Appendix B) and pages from both directories (Appendix C)
 
 
 [18]
 Where the form of expression is largely prescribed by functional constraints, the similarity of expression in a subsequent work must be very close in order to establish infringement. "Factual works are different [from works of fiction]. Subsequent authors wishing to express the ideas contained in a factual work often can choose from only a narrow range of expression.... Therefore, similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." Landsberg v. Scrabble Crossword Game Players, Inc., 736 F.2d 485, 488 (9th Cir.1984)
 
 
 [19]
 See Sem-Torq, Inc. v. K Mart Corp., 936 F.2d 851, 854-55 (6th Cir.1991) (Copyright law does not protect "forms of expression dictated solely by functional considerations.")
 
 
 [20]
 See Matthew Bender, 672 F.Supp. at 111 (Under merger doctrine, plaintiff could claim no copyright protection in headings used to display data regarding personal injury awards where "terms employed are the most logical and clear way of expressing the idea to be conveyed.... [and] these terms, or synonyms for them, are the only way of conveying the desired information.")
 
 
 [21]
 A comparison of corresponding pages from the two directories, which were before the district court as set out in Appendix C, reveals several obvious differences in typeface and graphic layout. Donnelley included different advertisements, not only in content, but also in number and design. BAPCO underlines its headings while Donnelley marks its headings with a sideways triangle. Donnelley uses a different type face. Whatever original authorship is represented by these types of presentation choices was clearly not copied by Donnelley. Further, the sales lead sheets (attached in Appendix B) produced from the ACS data base are obviously not similar in appearance or arrangement to BAPCO's directory, in which its claim of copyright was registered
 
 
 [22]
 The Second Circuit has observed:
 Although the test for infringement of original works and compilations is one of "substantial similarity," the appropriate inquiry is narrowed in the case of a compilation. As noted, the components of a compilation are generally in the public domain, and a finding of substantial similarity or even absolute identity as to matters in the public domain will not suffice to prove infringement. What must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation.
 Key Publications, Inc. v. Chinatown Today Publishing Enters., Inc., 945 F.2d 509, 514 (2d Cir.1991) (citations omitted); see also Cooling Sys., 777 F.2d at 492-93 ("What is important is not whether there is substantial similarity in the total concept and feel of the works, but whether the very small amount of protectable expression in Cooling Systems' catalog is substantially similar to the equivalent portions of Stuart's catalog.") (citation omitted).
 
 
 [23]
 The common errors in the BAPCO and Donnelley listings prove only that Donnelley admittedly copied the name, number, address, and type of business from every BAPCO listing. The presence of common errors is not probative of whether the portions of the BAPCO directory copied by Donnelley included the copyrightable elements of original selection, coordination and arrangement. In Feist, the alleged infringer copied every listing from the compilers' white pages, including four erroneous listings. 499 U.S. at ----, 111 S.Ct. at 1287. Because Rural copied only uncopyrightable facts, however, the presence of common errors was not relevant. See also Shira Perlmutter, "The Scope of Copyright in Telephone Directories: Keeping Listing Information in the Public Domain," 38 J. Copyright Society 1, 5-6 (Fall 1990) ("Where, as in Feist, the defendant has admitted copying, such evidence is simply irrelevant. Copying of erroneous or fictitious entries has no bearing on the question of whether material admittedly copied is protected by the plaintiff's copyright, and if so, whether the taking is substantial."); Alan Latman, "Probative Similarity as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement," 90 Columbia L.Rev. 1187, 1204-06 (1990) (distinguishing use of common errors as proof of copying from use as proof of substantial similarity of protected material)
 
 
 [24]
 Summary judgment in favor of the defendant in an infringement action is appropriate where the similarity between the two works concerns only uncopyrightable elements of the plaintiff's work. Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir.1992); Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983)
 
 
 [1]
 During the discussion of the evidence presented to the district court, I will also discuss the evidence presented and the new theories advanced at the "en banc trial."
 
 
 [2]
 In reasoning that BAPCO's selection of headings lack originality because many resemble NYPSA headings, the majority completely ignores the Feist Court's holding that an independent selection of data need not be "novel" in order to be deemed original. See Majority op. at p. 1443
 
 
 [3]
 In reaching its over-broad conclusion that none of BAPCO's selection, coordination, or arrangement is copyrightable, the majority merges the issues of originality and substantial copying. In doing so, the majority allows Donnelley to defeat BAPCO's claim of original selection, the first issue before this court, based on new evidence presented for the first time on appeal that relates mainly to the second, substantial similarity issue. Regarding the substantial similarity issue, the majority concludes that Donnelley presented evidence showing that it "established its own system of headings." The majority relies on citations to the record that Donnelley uses in support of its new assertion that it selected "a smaller universe" of classified headings. See Majority op. at 1443. The majority's reliance on these citations is misplaced for two reasons. First, as BAPCO argues, none of Donnelley's citations actually support the "smaller universe" assertion. See BAPCO En Banc Brief at p. 3 (compiling all portions of the record that Donnelley cites as "Exhibit 2"). Moreover, as discussed fully in section III-A, the relevant question is whether Donnelley proved that it selected a menu of classified headings for particular use in compiling its South Florida directories, not whether Donnelley entered codes corresponding to a general universe of headings in the Donnelley heading book
 
 
 [4]
 The majority summarily concludes that "it is the subscriber who selects" a particular classified heading without any discussion of BAPCO's evidence on this issue. See Majority op. at p. 1443
 
 
 [5]
 The majority blindly accepts Donnelley's argument that BAPCO surrenders ultimate editorial authority to advertisers without any consideration of BAPCO's obvious need to maintain final editorial discretion in order to protect the integrity and accuracy of its compilation
 
 
 [6]
 The majority reaches the conclusion that geographic scoping is an obvious and inevitable act of selection based on cursory analysis that analogizes the geographic scoping involved in classified directories to the scoping of white pages. However, as the majority points out, this case concerns a "directory of a different color." That distinction requires this court to thoroughly analyze the evidence under the Feist principles. Instead of such analysis, the majority's holding appears to be based on the mistaken notion that deciding copyright cases requires no more than an application of the collective common sense of judges
 
 
 [7]
 The majority not only merges its analysis of the originality and the substantial similarity issues, as previously noted, the majority also intertwines its slight discussion of Donnelley's first two alleged acts of copying, the computer database and sales lead sheets, with its exhaustive discussion of the lack of similarity between the actual published directories. The majority's focus on the distinguishable features of Donnelley's published directories, with only slight mention of the computer database and sales lead sheets, is not consistent with the development of facts in this case. That is, Donnelley's alleged copying of BAPCO's compilation into the computer database and onto the sales lead sheets occurred before BAPCO filed this action putting Donnelley on notice. Donnelley's actual publication of the 1985 Miami North and 1985 Miami South Directories occurred after BAPCO filed this action and after the district court denied BAPCO's motion for a preliminary injunction. Hence, it is not at all surprising that Donnelley's published directories contain a number of distinguishable features
 
 
 [8]
 Contrary to settled principles of finality, the majority permits Donnelley to back away from its stipulation in the district court regarding the representativeness of the seven lead sheets. Instead of considering the seven sales lead sheets and analysis of them as presented to the district court, the majority relies heavily on a visual comparison of selected pages from the three published directories. Indeed, it is unusual that this copyright case proceeded from October, 1985, to October, 1988, in the district court without the parties submitting complete physical copies of the disputed publications. But, it was this court, not the district court, that admitted the directories into the record in response to the parties' joint motion of January, 1993. The majority properly, albeit implicitly, declines Donnelley's request that this en banc court to engage in a side-by-side visual comparison of all pages in three published directories. See Donnelley En Ban Reply Brief, p. 22 nn. 16 & 17. However, the majority's visual comparison of selected pages from the directories is equally unfounded. As discussed fully in section III-C, the record before the district court consisted of a total of approximately forty pages from the published directories. Nothing in the district court opinion indicates that the district court actually made a side-by-side visual comparison of those pages except possibly to verify the conclusions in the Affidavit of Barbara J. Wiggs
 This court generally bases a reversal of a district court on evidence that the district court considered. The majority's outright reversal of the district court based upon its original 'findings' from a visual comparison of selected pages from the published directories, places this court in the novel position of retrying this case rather than reviewing it. Because Donnelley's own stipulation as to the representativeness of the sales lead sheets led the district court to reach what Donnelley now calls a "misleading result," this court must affirm the district court's conclusion on the substantial similarity issue. At a minimum, this court is required to remand to the district court for consideration of Donnelley's new theory of the case which hinges on a comparative analysis of pages from the published directories.
 
 
 [9]
 Incredibly, the majority ignores the fact that Donnelley failed to meet its burden of coming forward with relevant and competent evidence to rebut BAPCO's affidavit evidence. In doing so, the majority departs from the settled rule that a non-moving party may lose at the summary judgment stage based on its failure to come forward with competent evidence showing a genuine issue of material fact. See Four Parcels, 941 F.2d at 1438. As a replacement for the established rules concerning summary judgment, the majority's reliance on its original fact-finding in a visual comparison of pages from the published directories, establishes a new and absurd rule that a non-moving party failing to meet its burden in the district court may nonetheless win outright judgment with evidence considered for the first time on appeal
 
 
 [10]
 In addition, for the reasons stated in the now vacated panel opinion, Bellsouth, 933 F.2d at 960-61, I would affirm the district court's rejection of Donnelley's "fair use" and "antitrust misuse" defenses